TRUMAN H. SIMPSON, and others, *vs.* JOHN D. BLAISDELL.

Hancock.    Opinion December 14, 1892.

*Deed. Description. Evidence.*

Where a grantor conveys a wharf property by clear and definite description, and then adds to the description the following words: "Also one half of an acre of land near the wharf or at the wharf," the deed will be regarded as effective to convey a particular half-acre near the wharf which the parties to the deed, either before or after the date of the same marked out or identified and appropriated as the exact and identical parcel conveyed, or to be conveyed by such deed.

Evidence is admissible, for the purpose of assisting in an identification of the land, to show that the grantor, now deceased, while an owner of the land surrounding the half-acre pointed out to a witness, who was negotiating with him a purchase of an adjoining lot, the location of the half-acre, indicating its corners and other bounds.

ON EXCEPTIONS.

This was a real action in which the jury gave a verdict for the plaintiffs and the defendant excepted.

The case is stated in the opinion.

*Deasy and Higgins*, for plaintiffs.
*Wiswell and King*, for defendant.

PETERS, C. J.  The demandants claim title to an undivided sixth of a certain half-acre of land which Joseph Blaisdell undertook, by his deed given in 1838, to convey to George Hinman and Samuel P. Donnell, which deed contains the following description :

"Beginning at a pine tree spotted on four sides near the south east corner of the Card lot (so-called) ; thence running west twelve degrees north fifty-six rods to a birch tree spotted on four sides ; thence running north twelve degrees east twenty rods to a hemlock stump spotted on four sides ; thence running east twelve degrees south fifty-six rods to a stump spotted on four sides near a large rock ; thence south twelve degrees west twenty rods to the point of beginning, and containing seven acres more or less.  Also a road from said land to the shore in the place that will best convene the said Hinman and Donnell, together with the wharf built by Wooster and Sanborn in the year 1836, together with all the privileges and appurtenances thereunto belonging.  *Also one half of an acre of land near the wharf or at the wharf.*"

The seven acres parcel was purchased for a granite quarry upon it.  The road was for the convenience of transporting granite from the quarry to the shore.  And the half-acre was undoubtedly intended to be a place for depositing, according to the needs of the quarrying business, granite at the shore.  The controversy here is over the parcel of half an acre ; the defendant contending that the deed, so far as affecting that parcel, is inoperative and void for the want of sufficient description, and that the insufficiency cannot be supplied by any oral evidence. The question presented here is to be considered precisely as it might have been had it arisen between the original parties to the

deed, inasmuch as the present parties make their claims respectively by inheritance through and under them.

In approaching the task of making effective, if we legally can, the apparently uncertain description in this deed, we must remember that the law desires to sustain the validity of this class of instruments wherever it can.   Says Mr. Powell, the writer on this subject, "The law is curious and almost subtilizes to find reasons and means to make assurances and deeds enure according to the just intent of parties, and to avoid wrong and injury which, by abiding by rigid rules, may be brought out of innocent acts."   See Wash. Real Prop. 5th ed. vol. 3, * 621.   Said BARROWS, J., in *Cilley* v. *Childs*, 73 Maine, 130 : "Moreover it is well settled law, that a deed shall not be held void for uncertainty but shall be so construed, whenever it is possible, as to give effect to the intention of the parties and not defeat it ; and that this may be done whenever the court, placing itself in the situation of the grantor at the time of the transaction, with knowledge of the surrounding circumstances and of the force and import of the words used, can ascertain his meaning and intention from the language of the conveyance thus illustrated."

The questionable description in the deed before us is by no means a blank.   It fixes the locality "at or near the wharf." It is not a roving half-acre.   The purposes for which it was purchased, in connection with the use of the quarry and road and wharf, may indicate its proximate location, as it would be a half-acre adaptable to the use intended to be made of it.   The original parties to the deed, long ago deceased, must have understood just what territory was supposed to be conveyed.

Now, there were two ways in which the parties might have consummated the conveyance of the half-acre according to their intention.   They could survey out the parcel from the grantor's surrounding land and then make the deed of it, or could first make the deed and survey out and identify the parcel afterwards.

The demandant's position is that one or the other of these methods of making certain the location of the parcel was adopted.   While either mode would be legitimate, the indications are

that after the deed was delivered the grantor assigned a certain half-acre to the grantee which the latter accepted; or that the grantee appropriated to himself a certain half-acre with the acquiescence of the grantor, possession and occupation following afterwards. Suppose that Hinman, after receiving his deed, had selected out a half-acre, and entirely covered it with permanent structures, or had surrounded it with a permanent fence, the structures of fence remaining to this day and the grantee being in possession all the time, could any possible criticism defeat the title of the latter? And would not the result be the same even if there were no evidence of any assignment or appropriation of the half-acre more than the fact of such demonstrative possession and occupation? The supposed cases would be strong illustrations of the principle involved, but the same result may be attainable upon less cogent but still satisfactory evidence, and the principle would be the same. What the entire testimony was on that point we are not informed, as the case is not fully reported; nor do we know whether there has ever before this been any question as to the true location of the half-acre lot.

These principles are illustrated, either partially or fully, by many decided cases which sustain the general proposition, quoted by the demandant's counsel from Washburn on Real Property, as follows: "Thus, to sell ten acres of land without describing any boundaries to the same would be void; but if the parties then go on and stake out that quantity of land and the grantee takes possession of it, it ascertains the grant and gives effect to the deed." The case of *Farrar* v. *Cooper*, 34 Maine, 394, is much like the present case and directly supports the demandant's contention.

The defendant excepts to the admission of the testimony of the demandant's witness, Ambrose Simpson, upon which probably the verdict in favor of the demandant largely depended. His story in substance was, that in 1857 he and his brother were purchasing of the same Joseph Blaisdell land contiguous to the half-acre in question, and that they called upon Blaisdell to show them the location of the half-acre lot; that thereupon

Blaisdell procured a surveyor to measure the lines about it, he (Blaisdell) indicating the lines to the surveyor in presence of the witness ; and that the half-acre so shown and measured is identical with the premises demanded in this suit. No stakes were set at the time or found in the ground, but certain natural boundaries were pointed out by Blaisdell. This evidence was properly received as an admission by Blaisdell that the land had been formerly located by himself and his grantees. Counsel for the defense expresses the opinion that it would be hazardous to allow titles to depend for their validity upon such ephemeral evidence. But that must be a question rather for the jury than the court. It was evidence of a clear and unqualified admission of a party against his own interest, accompanied by very significant acts.

The charge of the judge on this point is excepted to, but we do not preceive anything in it legally objectionable. In his interpetation of the law and evidence of the case the judge made the following remarks :

"Now as to the bounderies of this half-acre lot,—for the purposes of this trial I give you the rule intimated by counsel, that, where land is given in this indefinite way,—that is, where its location is generally indicated in the deed, but its precise limits not defined,—then if we find that, at that time, or thereafterwards, the parties themselves defined its limits in any way, that will control. And that fact may be shown by outside evidence to aid us in determining the meaning of the deed. And we here come to a question of fact for you ; that is, whether or not at the time of this conveyance or afterwards this half-acre of land was defined,—I do not mean run out by a surveyor, or chained out, or stakes put down, but as between the parties to this conveyance was the half-acre of land ever defined? It may be defined in various ways. It can be defined by the parties going down with the surveyor, and surveying it off, and putting down marks. It can be defined in other ways perhaps. It need not be done necessarily by both parties being upon the ground at the time. If George Hinman went upon the land himself and began to use a half-acre,—a well defined half-acre,—marked it out by

piling paving all over a well defined half-acre, or in any other way ; if he began to use it in that way so as to make it clear and distinct that he was appropriating a certain specific half-acre under his deed ; and the grantor knew it, and saw it, and acquiesced therein for a number of years,—that would be evidence from which the jury might infer that it had been in that way marked out and appropriated ; but it would not be conclusive. The plaintiffs say that under this deed, the evidence should convince you that after the deed was given, either the parties together, or Mr. Hinman, with the consent of Mr. Blaisdell, Sr., by mutual agreement, marked out and defined this half-acre.

"Now, that is for you. If you come to the conclusion that it never was in any way marked out, either by occupation or in any other way, but was left for all time as it was first written, —simply a half-acre lot,—then you cannot say properly that this lot now in demand in the writ is that lot. You will have to say, so far as that is concerned, that the plaintiffs did not have a better title than the defendant. Whether or not the lot described in the writ as the half-acre lot is conveyed by the deed, depends upon whether you find as matter of fact that it was in some way marked out by the parties afterwards, either by both together, or by the grantee, the grantor knowing it and assenting to it impliedly. If you find that there was such a marking out then the plaintiffs have a *prima facie* title to both lots."

*Exceptions overruled.*

WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.