First Sav. Bk. & Tst. Co., Alb., v. Elgin et al, 29 N. M. 595

(No. 2819. April 8, 1924.)

# FIRST SAV. BANK & TRUST CO., ALBUQUER-QUE, v. ELGIN et al.

## SYLLABUS BY THE COURT.

1. Testimony of a surveyor concerning disputed location and boundaries of land, based on extrajudicial declarations and statements of persons assuming to have knowledge thereof, but not called as witnesses to the correctness of the information so given, is hearsay and inadmissable.

2. The statutes of New Mexico make no provision for a cross-appeal, as such, and, where both plaintiff and defendant appeal, each must file the bond required by statute in order to give the Supreme Court jurisdiction to consider his appeal.

3. The sufficiency of the description of premises in a deed is not to be measured by any inflexible rule or set of rules, but it is the province and duty of the court to place itself as nearly as possible in the situation of the parties to the instrument and endeavor to discover and give effect to their intention. The test in every case, as in the case of contracts other than deeds, is whether or not the intention of the parties can be discovered and effectuated.

4. A plaintiff, in a suit to quiet title against a defendant who makes claim to the whole of a tract of land of which plaintiff claims a small part within the interior under conveyances which without the aid of extrinsic evidence are insufficient as to description, who does not identify the land claimed, is not entitled to relief.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Suit by the First Savings Bank & Trust Company, Albuquerque, against Willie Elgin and others. Decree for defendants, and plaintiff appeals. Affirmed.

A. B. McMillen and L. F. Lee, both of Albuquerque, for appellant.

The original complaint described the tracts "E" and "F" according to the survey by Pitt Ross, by courses and distances. There were two questions that arose in the trial of the case: one was that the deeds offered in evidence did not cover the whole of tract "F" and one or more deeds shown in evidence were outside of "F"; and also the chain of title as to three or four different tracts depended upon a conveyance

to the Plaintiff after the commencement of the suit.
To meet this difficulty, the Plaintiff asked leave
of the court to file an amended and supplemental
.complaint to conform to the evidence adduced at the
trial, and to show the subsequent acquisition of cer-
tain of the tracts of land. This was granted by the
Court, and in anticipation of such pleading, the Court
made findings giving the Plaintiff full relief, and made
this finding:

"The Court holds further that the Defendant cannot ques-
tion the grant from the Commissioners, even if the instrument
making said grant may be irregular in form. A bona fide
effort to grant land, followed by possession of the grantee,
even if the deed is wanting in some particulars, is sufficient
to take the land out of the common land of the grant.

"The Court holds that McIntosh held possession of the
land. The objections of Mr. Wood to the introduction of the
deeds are overruled."

The Plaintiff filed its amended and supplemental
complaint setting out the titles that were acquired
subsequent to the filing of the suit, and in addition to
the description by survey of tracts "E" and "F" set
out in separate paragraphs, the description of each
of the deeds as given in the deeds themselves, of the
lands in or adjoining tract "F."

We do not understand that Judge Hickey in any
way changed his mind as to the right to file the
amended and supplemental complaint, or to give re-
lief thereunder, but that his final conclusion was that
the deeds in themselves were void for uncertainty. How-
ever, we refer to the authorities upon this subject for
the convenience of the Court.

Section 4133 of the 1915 code provides that an an-
swer or reply may allege facts that have occurred since
the institution of suit, thus giving the benefit of a sup-
plemental pleading.

Section 4169 provides:

"A party may be allowed, on motion, to make a supple-
mental complaint, answer or reply, alleging facts material

to the case or praying for any other or different relief, order or judgment."

Section 4281 provides:

"No action shall abate by the transfer of any interest therein during its pendency."

It would seem, in view of the well-known purposes of the code, to settle all questions affecting the subject matter of a suit in one proceeding, and with a provision that the transfer of any interest in the subject matter pending suit should not abate it, that it must be clear that changes in title which do not require the making of new parties, could not affect the right of the purchaser to recover that which was claimed at the beginning of the action, and for which appropriate relief was prayed.

We think this question was settled by this Court in the case of Bremen Mining Co. v. Bremen, 13 N. M. 111, and U. S. v. Irrigation Co., 13 N. M. 384. See also: Enc. of Pleading and Practice, Vol. 1, p. 548.

The attention of the court is called to our chain of title to each of the tracts in dispute. The court will observe in referring to copies of the record kept by the Commissioners, commencing at page 530 and continuing to page 538, that the Commissioners, in addition to the documents given out, kept a very accurate record of those documents and their actions in that behalf.

It was in regard to these very deeds that Judge Hickey said, in giving his decision:

"The Court holds further that the Defendant cannot question the grant from the Commissioners even if the instrument making said grant may be irregular in form. A bona fide effort to grant land, followed by possession of the grantee, even if the deed is wanting in some particulars, is sufficient to take the land out of the common land of the grant. The Court holds that McIntosh held possession of the land. The objections of Mr. Wood to the introduction of the deeds are overruled."

The trial court was right in the decision. The error came when he was induced to hold that these same deeds were void for uncertainty.

The act for the government of the Chilili Land Grant was passed January 14, 1876; laws of 1876, chap. 51. It is the earliest act upon the subject and has never been amended but once, and that is as to the last section, by the laws of 1899, chap. 47.

This act is found in the 1915 code as sections 839, 840 and 841.

The Chilili Land Grant is not governed by the general provisions relative to community land grants, as section 800 expressly provides that the act shall not apply to any land grant which is now managed or controlled in any manner other than herein provided by virtue of any general or special act.

Our contention is that any deed or right of possession, no matter how informal, that is recognized by the Commissioners of the Chilili Land Grant, is binding upon their successor, the Estancia Investment Company, and the Court, under the facts, by decree quieting title, may accomplish exactly what might have been accomplished if appropriate action had been brought in equity to enforce the execution of a deed in proper form signed by the president of the commission; in other words, the defendant, Estancia Investment Co. is bound by whatever adjudication the Court sees fit to make between the Commissioners of the Chilili Land Grant and the Plaintiff.

The defendants in this case have sought to question title acquired by Plaintiff by deeds pending suit, and to have affirmative relief by quieting title in their favor because Plaintiff did not have the title. These referred specifically to the title conveyed by the Commissioners of the Chilili Land Grant to Antonio Jose Elwell, Felipe Elwell, Fidel Elwell and George Elwell, and which their father, Pedro Elwell, attempted to convey to John McIntosh, and which they, pending the suit, quitclaimed to the Plaintiff; and also referred to land conveyed by the Commissioners of the Chilili Land Grant to Santos Mora, two of the very earliest conveyances in the meadows adjoining the old town of Chilili, and the conveyance by the Commis-

sioners to his son, Ciriaco More, adjoining him. ·As pointed out in another paragraph of this brief, we contend that there is no question, under the authorities, as to the right of the Plaintiff to relief when the facts are ·set up by supplemental complaint; but, if that were not true, the defendant, Estancia Investment Company, is not entitled to relief simply because the Plaintiff is not entitled to it. No proposition of law is better · settled than that the actor in a suit cannot recover if the title is shown not to be in him but in another. In order to have a decree quieting title, it must show title in itself, not in someone else. Warvelle on Ejectment, Section 246.

The descriptions in the deeds from the Commissioners of the Chilili Land Grant to Plaintiff's predecessors in title are sufficient to vest the title in the grantees therein named, and the said deeds are not void· for uncertainty. The deeds furnish the means of identification.

All the authorities hold that if the deed furnishes the means of identification, it is sufficient. The fundamental principle is set out in Blackstone, and has come down through all the generations, that a deed conveying a certain piece of land, describing that land by its name, such as Blackacre, is sufficient, and if there is any uncertainty as to the location of the boundaries of Blackacre, parol and extrinsic evidence may be relied upon to establish those boundaries.

Jones on Evidence, Section, 450; Devlin on Deeds, page 1405; Dorr v. School District, 40 Ark. 237; Devlin on Deeds, Secs. 1013, 1015; Shore v. Miller, 12 Am. St. Rep. 239; Havens v. Dale, 18 Cal. 359; Hanly and Shrieve v. Blackford, 25 Am. Dec. 114; Parker v. Salmons, 65 Am. St. Rep. 291; 18 C. J. Sec. 62, p. 180.

We think it proper to say that a suit to quiet title is an equitable proceeding, and that either legal or equitable title in the Plaintiff requires a decree in its favor. This is the recognized rule under code procedure, but is fixed definitely by section 4394 of the

1915 code, which was a part of chapter 107 of the laws of 1907 relative to suits to quiet title, and which is as follows:

"The action contemplated by this article shall be conducted as other actions, by equitable proceedings under the rules of chancery."

It seems hardly necessary to argue, under the circumstances in this case, that plaintiff was in no way bound by the default judgment. Plaintiff was not an unknown claimant. Known persons within the jurisdiction of the court, where service of summons can be made, can be brought into court and bound only by service of summons. Substitute service can be had only where a claimant is unknown, and this duty upon the part of the plaintiff to name parties when known continues up to the very time of taking judgment. This question has been settled by the following cases: Priest, et al., v. Las Vegas, 16 N. M. 692; Rodriguez, et al., v. La Cueva Ranch, 17 N. M. 246, 252.

Due process of law requires that all known persons be made defendants. The statute points out particularly the form and mode of issuing and serving of process. Ordinarily this must be done to bind anyone by an adjudication. Service by publication, even where the parties are made defendants by their proper name can be had only under certain specific instances, which must be shown by affidavit, which must show that the defendant resides or has gone out of the state, or has concealed himself within, has avoided service of process upon him, or is in any other manner so situated that process cannot be served upon him, or his or their names and places of residence are unknown, or his or their whereabouts cannot be discovered. Sections 4095 and 4388, 1915 Code.

It is clear from these two statutes that the plaintiff must do something more than shut his eyes and say he cannot see! There is only one way to determine that a person has been made a party to a cause: One is to name him, and the other is to describe him if the name is not known.

Marron & Wood, of Albuquerque, for appellees.

The evidence failed to establish title in the plaintiff, or to identify, any land within the limits of that quieted in the defendant, as belonging to the plaintiff.

It was necessary for the plaintiff to identify and locate his lands by evidence extraneous to the deeds, and failing to do so, the court could do nothing else than to reject claims not so located by the evidence. McArthur v. Porter, 6 Peters 205; 15 Cyc. 144; Webster v. Harris, 59 L. R. A. 324 at 333; Jarvis v. Lynch, 157 N. Y. 448; Northern Railway Co. v. Jordan, Calif., 25 Pac. 273; Gittings' Lessee v. Hall, (Md.) 2 Am. Dec. 502 at 509; Cottingham v. Hill (Ala.), 72 A. S. R. 923. See also: Bunger v. Grinnell, 9 Mich. 544; Harrisburg v. Crangle, 3 W. & S. 460.

The judgment in the suit brought by the Estancia Investment Company to quiet its title to these lands is *res adjudicata* against the plaintiff.

The record in that cause appears at pages 493-503 of the transcript. The judgment is clearly *res adjudicata* unless the McIntosh heirs and assigns were not properly sued as "unknown claimants of interest." McClymont v. Noble, 87 A. S. R. 354 & note.

The attempted conveyances by Pedro Elwell and his associates of grant lands to their children was void and furnished no basis for a further conveyance.

There is no support in the evidence to sustain the judgment awarding tract D to the plaintiff and it was error to so award it.

### OPINION OF THE COURT.

BOTTS, J. The meritorious question in this case is whether or not a plaintiff is entitled to relief in a suit to quiet title against a defendant who makes claim to the whole of a tract of land, of which plaintiff claims a small part within the interior under conveyances which of themselves are insufficient as to description to identify the land claimed; no identification by extrinsic evidence being made.

Plaintiff, the First Savings Bank & Trust Company, filed suit against several defendants to quiet its title to certain small tracts of land designated in the record by the letters A, B, C, D, E, F, G, and H, all lying within the exterior boundaries of the Chilili grant in Bernalillo and Torrance counties. Defendant the Estancia Investment Company defended on the ground, among others, that it was the owner of a specifically described tract of 1,500 acres out of the east end of said grant and within which the tracts D, E, and F, as described in the original complaint, are located. These tracts are described in the complaint by a survey tied to an established corner setting out the metes and bounds by courses and distances. They are unfenced, and no one is in the actual possession thereof. No question is raised as to the sufficiency of this description to identify the land, but at the trial plaintiff failed to identify the land attempted to be conveyed by the various deeds under which plaintiff claimed, with the land as described by the survey. Plaintiff after the hearing asked and was granted leave to file an amended complaint wherein an additional description was set out, copied verbatim from the deeds, not alleging that the land so described is the same as that described by the survey; but, from all that appears from the amended complaint, the new description might well be of land entirely different from that first described. The description of tract E may be taken as a fair representation of the character of the description contained in the several deeds. None of them contained a description more definite, and that in some of them is even less definite. The tract is described as follows :

"That tract of land in the Chilili grant, situated at the place known as the town of Chliili, measuring from north to south 1,000 yards, and from east to west 600 yards. Bounded on the north by the lands of Gil Gutierrez; on the south and west by lands of the Chilili grant; on the east by lands of Ramon Moya and formerly being the land of Adelaido Garcia and Adelubina Mora de Garcia."

Tract F is supposed to be made up of a large num-

ber of smaller tracts. All claims, both those of plain-tiff and that of defendant, are based on alleged direct or mesne conveyances from the board of commissioners of the Chilili grant.

[1] The only evidence offered in an effort to iden-tify the land described in the deeds with the land de-scribed in the original complaint, or at all, was the testimony of a surveyor who had no personal knowledge of the boundaries, either of the land in suit or of that by which it purports by the deeds in certain instances to be bounded, and upon it becoming plainly appar-ent that the witness' identification of the land was based upon pure hearsay, and no other evidence being offered by which the surveyor's lines could be validated, the court, on motion of the defendant, struck out the testimony. This ruling of the court is complained of as error and may as well be disposed of at this point. The record discloses that the surveyor, when he went on the ground prior to the suit for the purpose of mak-ing a survey by which the land could be definitely described and located, made inquiries of various per-sons as to purported boundaries and locations and un-dertook to determine for himself, from the result of such inquiries, what the boundaries and locations should be. The persons interrogated by this surveyor were not examined in court relative to their knowledge upon which their statements to him were based, and, in fact, when the defendant undertook to cross-examine one of these witnesses concerning this matter, successful ob-jection was made by the plaintiff that it was not proper cross-examination; the examination in chief having been confined to an entirely different point.

To make evidence of this character admissible would be to give a surveyor judicial powers and to recognize his right to determine a controverted fact upon the unsworn statements of witnesses whom an adverse party has no opportunity to cross-examine. Plaintiff cites us no authority, and we know of none, which excepts evidence of this character from the operation

of the hearsay rule. The court was correct, therefore, in striking out the evidence.

The court entered a decree quieting plaintiff's title to all of the tracts, except E and F. Both parties appeal, the plaintiff questioning the correctness of the court's decree as to the tracts E and F, and the defendant questioning the decree as to tract D.

[2] With respect to the defendant's appeal, plaintiff raises the objection that the only appeal bond filed in the case was that filed by plaintiff, and that defendant's appeal must fail for want of a bond, on authority of Hernandez v. Roberts, 24 N. M. 253, 173 Pac. 1034, construing section 15, c. 43, of the Laws of 1917. With this contention of plaintiff we agree. Our statute makes no provision for a cross-appeal, as such, so that where both parties to a judgment appeal therefrom, each, in order to give this court jurisdiction to consider his appeal, must file the bond required by statute. Defendant's failure to file an appeal bond precludes any consideration of the judgment in so far as it affects tract D, and leaves only tracts E and F before us.

It is readily apparent that the land cannot be located or identified solely from the descriptions contained in the deeds, but the plaintiff complains that the trial court held the conveyances void for insufficiency of description, and assigns error in this respect on the ground that the land might be located by extrinsic evidence. We do not so understand the ruling of the court. The deeds were admitted in evidence over the objection of the defendant, and plaintiff was given an opportunity to aid the description by extrinsic evidence; but with this opportunity presented to it, and after an effort to so aid the description, the land still remained unlocated and unidentified. The court specifically found by finding of fact No. IV that the evidence failed to identify any of the lands, except tract D, claimed by the plaintiff within the portion of the grant claimed by the defendant so as to enable

the court to ascertain the location of such lands, and that the claim of the plaintiff to such lands, except tract D, is not well founded.

In support of defendant's argument that the court correctly refused to quiet plaintiff's title because of the failure to locate and identify the lands, counsel cite the following authorities: McArthur v. Porter, 6 Pet. 205, 8 L. Ed. 371; 15 Cyc. 144; Webster v. Harris, 111 Tenn. 668, 69 S. W. 782, 59 L. R. A. 324; Jarvis v. Lynch, 157 N. Y. 445, 52 N. E. 657; Northern Ry. Co. v. Jordan, 87 Cal. 23, 25 Pac. 273; Gittings' Lessee v. Hall, 1 Har. & J. (Md.) 14, 2 Am. Dec. 502; Cottingham v. Hill, 119 Ala. 353, 24 South. 552, 72 Am. St. Rep. 923; Munger v. Grinnell, 9 Mich. 544; and Harrisburg v. Crangle, 3 Watts & S. (Pa.) 460. An examination of these authorities discloses that they are discussing the rule in ejectment cases, but we also find that a similar rule has been applied by courts in suits to quiet title. In Kadderly v. Frazier, 38 Or. 273, 63 Pac. 487, the trial court sustained a demurrer to the complaint on the ground that the premises, title to which was sought to be quieted, were insufficiently described. The Supreme Court of Oregon said:

"The question presented for consideration is whether the complaint describes plaintiff's land wiht sufficient certainty for identification so that a decree can be predicated thereon. It would be very difficult to say, from an inspection of the language of the complaint as quoted above, what part of the L. .B. Morgan donation land claim had been levied upon by the sheriff. In Ward v. Janney, 104 Ala. 122, 16 South. 73—a suit to quiet the title to real property—the complaint, in respect to the description of the premises, contains this averment: 'The following real estate, situated near the city of Montgomery, Alabama, namely, five acres of land, being a part of lot number five according to the survey made by A. J. Pickett of the land of Mrs. Westcott;' and it was held that the description was insufficient, and that the complaint was vulnerable to a demurrer interposed upon that ground. In the case at bar, the plaintiff not having described the real property with sufficient certainty for identification, no error was committed in sustaining a demurrer thereto, and hence the decree is affirmed."

The Supreme Court of Alabama, in the case of Inge

v. Demouy, 122 Ala. 169, 25 South. 228, in discussing the question of whether or not a complaint wherein the land was not definitely described was sufficient to withstand demurrer, said:

"The ground of demurrer in respect to the description of the land, as given in the bill; was general as to the three separate lots therein referred to and described. The description of the first lot mentioned is: 'That certain lot on the south side of Dauphin street, between Conception and Joachim streets, having a front twenty-eight feet and seven inches on Dauphin street, by a depth of one hundred and ten feet, more or less, being next east of Sangrouber.' The decree in a case of this kind, as we have heretofore said, is not intended to be presently executed, but is to stand for all time as a muniment of title. This description is not void for uncertainty, in a bill where the decree is to be presently executed. It is one of those uncertain descriptions, in a case of this character, which may be aided by parol, and comes within the maxim, 'Id certum est quot certum reddi potest.' Where Sangrouber's lot is, could now be easily ascertained by parol; and the description given would enable a surveyor, at the present time, to locate it, and thereby locate the lot referred to in the bill. Homan v. Stewart, 103 Ala. 650, 16 South. 35; Griffin v. Hall, 115 Ala. 482, 22 South. 162. But Sangrouber's possession and ownership of his lot are not necessarily continuous, and such a description as the one given is, therefore, necessarily ephemeral. The description, in order to meet the requirements of the statute, should have been of a character sufficiently certain to identify the lot always hereafter, in its muniments of title. The landmarks employed, we apprehend, fall short of that certain, continuous identification of the property which is necessary. The descriptions of the other two lots seem to be sufficiently certain. They are enduring. Ward v. Janney, 104 Ala. 122, 16 South. 73. But, as stated, the demurrer went to the whole bill, in which two lots were, and the third was not, well described; and was, therefore, properly overruled."

See, also, College Corner, etc., Co. v. Moss, 92 Ind. 119; Jones v. Mount, 30 Ind. App. 59, 63 N. E. 798; Ratliff v. Stretch, 117 Ind. 526, 20 N. E. 438; Ward v. Janney, 104 Ala. 122, 16 South. 73.

It is true the defendant did not demur to the complaint in this case, but it must be remembered that the original complaint was not defective in this particular, since it described the premises by what purported to be a survey by courses and distances tied to recognized and established corners, and, while the

record does not show any of the proceedings relating to a motion by plaintiff for leave to file the amended complaint wherein the new and uncertain descriptions were first set out, except the ruling of the court permitting it to be filed, which was seven months after the hearing of evidence was closed and some two weeks before the amended complaint was actually filed, the bill of exceptions does show that the identity of the premises claimed by plaintiff was one of the principal issues in the case and was a controversy around which much of the record revolves.

But the authorities are not all with respect to the sufficiency of a complaint to withstand demurrer on the ground of indefiniteness of description. In the case of Craig v. Mings, 144 S. W. 316, it appears that a party owned two adjoining tracts of land; the north boundary line of one being the south boundary line of the other. One of these tracts was conveyed to the plaintiff and the other to the defendant. The plaintiff filed suit against the defendant to quiet his title, and the court failed to determine the exact boundary line between the two tracts. In that case the boundary seems to have been the sole question at issue. The Court of Civil Appeals of Texas held that the judgment was erroneous, saying:

"From the statement made it is apparent, we think, that the judgment is erroneous. Viewing the controversy, as the parties and trial court seem to have viewed it, as one involving only the location of the boundary line between the two tracts of land, the judgment did not determine it. The purpose of the suit, so viewed, was left wholly unaccomplished by the judgment. The court should have determined the location on the ground of the line between the two tracts, and by his judgment should have so described and identified it as to have enabled an officer charged with the duty of executing a writ of possession to go upon the ground, and, 'without exercising judicial functions, ascertain the locality of the line fixed by the judgment.' Wilhelm v. Bauman, 133 S. W. 292. 'If the judgment does not accomplish that result,' said the court in the case cited, 'it is of no avail and should be set aside on appeal.'"

In Hill v. Bamer, 8 Cal. App. 58, 96 Pac. 111, the trial court had failed to establish the boundary be-

tween the plaintiff and one of the defendants, and the
appellate court refused to uphold the decree. It was
there said:

"The language of the finding and of the judgment as to
the description of the land is a repetition of that contained
in the complaint, and is too general to furnish any defi-
nite idea of the exact location of the boundary lines of the
lots. This is obviously insufficient. In order to give stabil-
ity to the judgment it and the corresponding findings should
describe the land with such definiteness as to enable the
parties to know from such description the precise limits or
the location of the boundary lines thereof. Porter et al
v. Counts, supra; Shaw v. Hill, 79 Mich. 86, 44 N. W. 422;
Wickersham Banking Co. v. Rice, 137 Cal. 506, 70 Pac. 546.
Measured by these tests, the findings and judgments in the
cases at bar cannot for a moment be upheld."

In this case it is unnecessary for us to decide whether
the rule requiring definiteness of description is applica-
ble to a case where there is no overlapping of claims,
nor do we need to decide whether the decree of the
court would have been void or only erroneous had the
plaintiff prevailed.

It may be that a particular stipulation in the con-
tract under which the defendant acquired title to the
large tract, within which plaintiff's claims seem to
have their indefinite situs, may require us to consider
the question here presented as though it had arisen
between a plaintiff grantee seeking to quiet his title
against a defendant grantor to the extent that no de-
fenses are here available to the defendant which would
not have been available to the board of commissioners
of the Chilili grant.

[3] Assuming this to be true, the real question be-
fore us is therefore whether or not the assumed grantee
has established title to lands within the external bound-
aries of the assumed grantor's larger tract. In ar-
riving at the correct solution of this problem, it is the
province and duty of the court to place itself as nearly
as possible in the situation of the parties to the instru-
ments under which title is claimed, and endeavor to
discover and give effect to the intention of the parties.

Simpson v. Blaisdell, 85 Me. 199, 27 Atl. 101, 35 Am. St. Rep. 348. Much is said in the books about deeds which are void because of uncertainty in the description of the premises attempted to be conveyed, but it is not to be understood that the sufficiency of a description in a deed is to be measured by any inflexible rule or set of rules. The test in every case, as in the case of contracts other than deeds, is whether or not the intention of the parties can be discovered and effectuated. If so, unless the rights of third parties intervene to prevent, the deed is valid; if not, it is invalid. So, if a deed contains an indefinite and uncertain description, and the parties, either before the execution of the instruments or afterwards, by agreement, go upon the ground and mark out the boundaries of the land intended to be conveyed, the deed is valid (Simpson v. Blaisdell, supra), and the same result would undoubtedly follow if the grantee should go upon the lands of the grantor and mark out the boundaries and go into possession of the land claimed under the conveyance and so remain in possession with acquiescence of the grantor.

[4] But in this case there is no agreement between the parties as to what is intended to be conveyed, the boundaries are not marked, no one is in actual possession, and the plaintiff undertook and failed to identify and locate the subject-matter of the several alleged conveyances by extrinsic evidence. How, then, can the court give effect to the intention of the parties when the intention concerning the subject-matter of the alleged conveyances is not shown? How can the court protect the plaintiff in its title and right to possession of the land alleged to have been so conveyed when the land cannot be identified? How could the court have barred and estopped the defendant from claiming or asserting title to land within the outer boundaries of its larger tract without pointing out to the defendant definitely the lands to which the court's decree was applicable, and how could plaintiff's title be quieted as against the defendant unless the defendant were so

barred and estopped? Finally, how could the court have designated to the defendant the land, title to which it was sought to be barred and estopped from asserting unless the plaintiff first designated such land to the court? This the plaintiff failed to do, and the court did not err in rendering judgment for the defendant.

The other questions raised become of no importance, in view of our decision on the main point.

The decree of the lower court should be affirmed and it is so ordered.

PARKER, C. J., and HOLLOMAN, District Judge, concur.