692 P.2d 50

**Ernst H. BLUMENTHAL and Mary J. Blumenthal, his wife, Plaintiffs-Appellants and Cross-Appellees,**

v.

**CONCRETE CONSTRUCTORS COMPANY OF ALBUQUERQUE, INC., a New Mexico corporation; M. Joan Dale: Rodney A. Houghton and Carol Houghton, his wife, Defendants-Appellees and Cross-Appellants,**

**and**

**Julie Denison, Intervenor-Appellee and Cross-Appellee.**

**No. 7619.**

Court of Appeals of New Mexico.

Nov. 20, 1984.

Harry O. Morris, Albuquerque, for defendants-appellees and cross-appellants.

W.A. Sloan, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for plaintiffs-appellants and cross-appellees.

Thomas J. Dunn, Moses, Dunn, Beckley, Espinosa & Tuthill, Albuquerque, for intervenor-appellee and cross-appellee.

## OPINION

BIVINS, Judge.

Plaintiffs Blumenthal brought this action to quiet title to 16.922 acres of real estate in Sandoval County. The district court ruled in favor of plaintiffs as to 13.922 acres and in favor of defendant-intervenor Julie Denison (Denison) as to approximately 3.0 acres. The court also ruled against defendants Concrete Constructors of Albuquerque, Inc., Houghton, and Dale (hereafter collectively defendants Concrete), as to the portions of the real estate claimed by them.

The plaintiffs appealed as to that portion of real estate which the decree adjudged against them, and defendants Concrete cross-appeal with respect to the portion of the decree adjudged against them.

The issues presented are:

*By defendants Concrete*

I. Whether the descriptions in the deed from the original grantors, Vito C. de Baca and wife to James Toulouse, and from Toulouse and wife to plaintiffs Blumenthal, are inadequate as a matter of law and thus incapable of conveying any interest.

II. Whether the deed from Vito C. de Baca and wife to James Toulouse was intended to be a mortgage.

III. Whether the court erred in failing to recognize in its judgment that title to Lot 1 is subject to balances owed by Denison.

*By plaintiffs Blumenthal*

IV. Whether the evidence was sufficient to warrant a finding of adverse possession in favor of Denison's claim of title to Lot 1. (Comprising the approximately 3.0 acres adjudged in favor of Denison).

V. Whether the evidence was sufficient to warrant a finding that plaintiffs were guilty of laches or affected by laches or estoppel respecting Denison's claim to Lot 1.

Plaintiffs limit their appeal to the issues of adverse possession and equitable defenses as against Denison only. On cross-appeal, Denison adopts defendants Concrete's claims of equitable defenses and inadequacy of the deed's description. Defendants Concrete do not address the issue of adverse possession as they feel it is immaterial because of the inadequacy of the description of the two deeds. We affirm in part and reverse in part.

**FACTS**

On June 15, 1955, Vito C. de Baca and his wife Corina C. de Baca, as owners of the real estate in question, executed a note and mortgage in favor of guarantor James R. Toulouse and his wife. The Toulouses had guaranteed a note and mortgage given by the C. de Bacas to a bank. Subsequently, on March 24, 1956, the C. de Bacas conveyed the property to the Toulouses by quitclaim deed in satisfaction of the mortgage. The deed described the property as follows:

> A parcel of land known as the Pueblitos within the San Antonio de las Huertas Grant, and bounded as follows: on the N. by J. Trujillo on the So. by Abelina Gurule on the E. by J.T. Gurule on the W. by J.A. Gurule. (Mortgage and deeds in the hands of the party of the second Part.)

On July 26, 1956, the Toulouses, using essentially the same description, conveyed the same property by quitclaim deed to plaintiffs Ernst Blumenthal and his wife who had an archaelogical interest in the property. That deed was recorded on August 6, 1956.

During the early 1960's, plaintiffs brought two quiet title suits involving the subject property. The first suit was filed in district court on November 17, 1961, and on plaintiffs' own motion was dismissed four days later. On February 13, 1964, plaintiffs filed another quiet title action and proceeded through the publication stage. Plaintiffs did nothing further and on December 15, 1975, the district court entered an order dismissing the case for lack of prosecution. The plaintiffs claim the first suit was dismissed in anticipation of a larger suit which they never initiated, and the second was not pursued because of financial constraints. The district court did not consider that the dismissal without prejudice of the two quiet title actions adversely affected plaintiffs' title in any manner. (*see* discussion under point III).

Vito C. de Baca died on June 16, 1969, and his wife Corina, predeceased him in 1959. Vito's estate was never probated by his heirs.

In the period of April-August 1973, Vito C. de Baca's daughter, Consuelo, obtained quitclaim deeds to herself as grantee from her six brothers and sisters to the subject property. On February 11, 1980, Consuelo entered into a real estate contract with defendant Concrete Constructors to sell her purported entire interest in the property.

On June 6, 1980, defendant Concrete Constructors filed for record a subdivision plat which divided the property into Lots 1, 2 and 3. Following the filing of the plat, mesne conveyances affecting Lot 1 occurred between Concrete Constructors, Dale, Stratton (not a party to this action) and Denison. As to Lot 2, defendant Houghton entered into a real estate contract with Concrete Constructors on June 6, 1980. Concrete Constructors claims title to Lot 3. All of the foregoing grantees apparently relied on title insurance policies which each had received at the time of the purchase of their respective properties.

This action to quiet title was brought by plaintiffs Blumenthal on March 18, 1982. Denison subsequently intervened in August of 1983.

## DISCUSSION

### I. Adequacy of Description in Deed

■ Under this point defendants Concrete, joined by Denison, contend that the descriptions in the deeds from Vito C. de Baca and wife to the Toulouses and from the Toulouses to plaintiffs were so vague and indefinite as to be wholly inadequate to transfer title as a matter of law. These defendants correctly state the elementary principle that "in a suit to quiet title to real estate, the plaintiff must recover upon the strength of his own title and not the weakness of that of his adversary." *Perea v. Martinez*, 95 N.M. 84, 619 P.2d 188 (1980).

Defendants rely on *Komadina v. Edmondson*, 81 N.M. 467, 468 P.2d 632 (1970) for the following proposition:

It is fundamental that "In order to make a valid conveyance of land, it is essential that the land itself, the subject of the conveyance, be capable of identification, and, if the conveyance does not describe the land with such particularity as to render this possible, the conveyance is absolutely nugatory, * * *" 4 Tiffany, Real Property § 990 (3rd ed. Jones 1939).

81 N.M. at 469, 468 P.2d 632.

*Komadina* also stated that the "grantor's intent must be ascertained from the description contained in the deed which must itself be certain or capable of being reduced to certainty by something extrinsic to which the deed refers." *Id.* at 469, 468 P.2d 632. If extrinsic evidence must be relied on to identify the land, then, according to *Komadina*, the deed itself must point to the source of the extrinsic evidence. Thus, argues defendants, since the deeds in question did not point to any extrinsic evidence, they are void and convey no title.

Defendants point out that the description in *Komadina* which was found defective is remarkably similar to the description in the deeds in question. The difference between *Komadina* and the case before us lies in the fact that the trial court in *Komadina* found the extrinsic evidence relied on insufficient, whereas in the present case the trial court found the property identifiable. Finding number 6 states:

The Court further finds that soon after the conveyance by the Bacas to the Toulouses and further from the Toulouses to the Plaintiffs, Vito Baca personally escorted the Toulouses and the Plaintiffs to [the] subject property and pointed to all of the boundaries and corner monuments to [the] subject property and as further conveyed and described by the Bacas under the deed of conveyance Supra.

All of said parties were satisfied with the boundaries of the property and the boundary markers, particularly the corner markers.

■ In *Komadina* the plaintiffs conceded that the descriptions in the deeds themselves were insufficient to identify the property, but urged use of extrinsic evidence. Because the land here could be, and in fact was, identified from the description, the rule of *Komadina* does not apply. Testimony of a surveyor taken at trial, as well as a review of the abstract of the property, reveals that the identity of several of the adjoining landowners named in the deed's description were ascertained and thus boundaries could be established. The trial court found the description adequate and defendants do not challenge that finding on appeal. As stated in *Lerma v. Romero*, 87 N.M. 3, 528 P.2d 647 (1974), facts found by the trial court and not challenged are the facts upon which the case rests in the appellate court.

In *Marquez v. Padilla*, 77 N.M. 620, 426 P.2d 593 (1967), the supreme court quoted from its earlier case of *Armijo v. New Mexico Town Co.*, 3 N.M.Gild. 427, 5 P. 709 (1885):

"The general rule is that if the description of the premises given in a deed affords sufficient means of ascertaining and identifying the land intended to be conveyed, it is sufficient to sustain the

conveyance. *Vose v. Bradstreet,* 27 Me. 156; *Bosworth v. Sturtevant,* 2 Cush. 392; *Eggleston's Lease v. Bradford,* 10 Ohio, 312."

"That case has been cited and followed many times since it was announced, most recently in *Hughes v. Meem,* 70 N.M. 122, 371 P.2d 235 (1962) and in *Quintana v. Montoya,* 64 N.M. 464, 330 P.2d 549, 71 A.L.R.2d 397 (1958)."

Here the trial court found that the description did provide the means of ascertaining and identifying the land intended to be conveyed. *Komadina* states that "[i]t is presumed that the grantor in a deed of conveyance intended to convey something and the deed will be upheld unless the description is so vague or contradictory that it cannot be ascertained what land in particular is meant to be conveyed." 81 N.M. at 469, 468 P.2d 632 (citations omitted).

The present case is more like *Sternloff v. Hughes,* 91 N.M. 604, 577 P.2d 1250 (1978) which distinguished *Komadina* on similar grounds. *Sternloff* cites to earlier cases which upheld descriptions naming adjoining property owners with extrinsic evidence. *Sternloff* states:

Nor have the New Mexico cases held, as a matter of law, that a deed is void due to vagueness when the land description names only the adjoining land owners without reference to the angle, length or shape of the parcels.

91 N.M. at 606, 577 P.2d 1250. We agree with the federal Tenth Circuit's reading of *Komadina* that New Mexico does not so severely limit the admissibility of extrinsic evidence. *El Paso Natural Gas Co. v. Western Bldg. Assoc.,* 675 F.2d 1135 (10th Cir.1982). *Komadina* was decided on the basis that the property could not in that case be identified; therefore, we do not believe the supreme court intended to depart from or set a new standard for determining the validity of a deed based on the adequacy of its description.

Defendants also refer us to language in *Komadina,* quoting from *First Sav. Bank and Trust Co., Albuquerque v. Elgin,* 29 N.M. 595, 225 P. 582 (1924), that the test in every case is whether or not the intention of the parties can be discovered and effectuated. If it can, then the deed is valid "'unless the rights of third parties intervene to prevent ....'" 81 N.M. at 470, 468 P.2d 632.

It is not clear from *Komadina* exactly how the rights of third parties were involved in that case. A reading of the quoted language in context suggests that the rights of third parties must intervene at the time the intention of the parties is discovered and effectuated. The defendants do not enlighten us as to what rights they are claiming or how those rights, if any, intervened to prevent the effectuation of the intentions of C. de Bacas and Toulouses or the Toulouses and plaintiffs. As to the defendants Concrete, they face two immediate problems.

■ In reviewing their requested findings of fact and conclusions of law, we find no clear request that the trial court find intervening rights to prevent ascertainment of the intentions of the parties to the deeds in questions. *McNabb v. Warren,* 83 N.M. 247, 490 P.2d 964 (1971). To the extent defendants Concrete requested findings of fact and conclusions of law challenging the adequacy of the descriptions may be said to implicitly include third-party intervention of rights, these defendants must fail because their only claim of right was through adverse possession and this claim they abandoned.

■ As to Denison, she did assert in her requested findings the intervention of third party rights, although in the context the request appears to relate to adverse possession rather than deficiency of title. Giving her the benefit of any doubt, we hold, first, that there exists no evidence that any rights Denison or her predecessors might have had intervened at the time the C. de Bacas, Toulouses and plaintiffs' deeds were executed so as to prevent discovery and effectuation of the intent of those parties; and, second, Denison does not challenge the negative finding as to the adequacy of

these conveyances. We do not consider Denison's failure as an adverse possessor, described under point IV, although arguably her claim of right might well evaporate since she did not meet the requirements to establish adverse possession.

We have considered the case of *Perea v. Martinez,* which follows the *Komadina* rule, but unlike the case here, the reference in *Perea* to "mesa land" provided no basis for identifying the tract.

Defendants Concrete in their brief set forth a number of findings which they challenge. With the exception of finding number 7, relating to a survey, the other challenges are legal in nature and are answered by the discussion above. Because finding number 7 does really no more than reinforce finding number 6, the attack made on it would not affect the result we reach. The property could be identified and the trial court so found.

This point is without merit.

## II. Intent

Defendants Concrete also argues that the deed from Vito C. de Baca to James Toulouse was intended to be a mortgage. Defendants appear to rely on the following facts to support their argument. First, Mr. Toulouse stated at trial that he would have given the property back had Mr. C. de Baca so requested. Second, Consuelo's father had a strong attachment to the subject land and not until 1982 did she become aware that her parents had mortgaged and conveyed the property.

This argument is also without merit. Although a deed of conveyance, unconditional on its face, may be shown to in fact constitute a mortgage if the instrument was understood and so intended by the parties, substantial evidence exists to support the finding of the trial court that the deed was in fact a valid deed. *See Palmer v. City of Albuquerque,* 19 N.M. 285, 142 P. 929 (1914). According to the direct and unimpeached testimony of two witnesses, it was at Vito C. de Baca's insistence that James Toulouse accept the deed in order to extinguish a debt of Vito's

which the Toulouses had guaranteed. The deed was subsequently recorded on March 24, 1956. The subject land was then conveyed by Toulouse to plaintiffs Blumenthal. At a later date, Vito C. de Baca, James Toulouse, plaintiffs Blumenthal and a surveyor "walked" the entire property in order to ascertain the boundaries. As the supreme court stated in *Sternloff:*

> This Court will not disturb findings, weigh evidence, resolve conflicts or substitute its judgment as to the credibility of witnesses where evidence substantially supports findings of fact and conclusions of law of the trial court.

91 N.M. at 608, 142 P. 929.

## III. Equitable Defenses

Plaintiffs argue that the trial court erred in concluding that plaintiffs were guilty of laches and estoppel as to the Denison lot. Defendants Concrete contend that the plaintiff is guilty of laches and estoppel with respect to the *entire* tract, not just as to Lot 1 as the trial court found. Denison joins in this argument and asserts that the defense of laches is a proper ground in New Mexico for a quiet title suit. Both defendants Concrete and Denison argue that since the plaintiffs were not on the property from 1974 until 1981, and since there had been mesne conveyances and improvements on the property, the defense of laches or estoppel was proper.

Assuming that such actions by the plaintiffs were material, it need only be noted that the pre-trial order limited the claims of laches and estoppel to the plaintiffs' failure to prosecute two prior quiet title actions. The principle is well established that a pretrial order, made and entered without objection, and to which no motion to modify has been made, "controls the subsequent course of action." NMSA 1978, Civ.P.R. 16 (Repl.Pamp.1980). *See also Ortega, Snead, Dixon and Hanna v. Gennitti,* 93 N.M. 135, 597 P.2d 745 (1979). Without a showing of manifest injustice, the trial court, as a matter of law, went outside its pretrial order in concluding that the plaintiffs were guilty of laches and/or

estoppel. The court found only that plaintiffs made no effort to notify anyone of their interest for ten years but "stood idely [sic] by" during that time, however, no specific finding was made as to the effect of the two prior quiet title actions on these equitable defenses.

 The failure by the trial court to find a material fact must be regarded as a finding against the party having the burden of establishing such fact. *Baker v. Shufflebarger and Associates, Inc.*, 77 N.M. 50, 419 P.2d 250 (1966). Having made no finding as to the effect of the two prior quiet title actions on the equitable defenses, we must consider this an adverse finding by the trial court against defendants Concrete and Denison.

 Moreover, even if the trial court properly went outside the limits of the pretrial order, we hold the evidence insufficient to support a finding of laches or estoppel. No evidence was presented of any misleading representations or conduct on the plaintiffs' part. The plaintiffs' deed and tax assessments were of record since 1956. Although plaintiffs did not visit the property from 1974 to about 1981, delay or lapse of time alone does not constitute laches or work on estoppel. *See Modisette v. Foundation Reserve Insurance Co.*, 77 N.M. 661, 427 P.2d 21 (1967). The testimony shows that upon plaintiffs' return in 1981, Stratton, the immediate predecessor of Denison, was notified of plaintiffs' interest in the land and that suit would be filed.

## IV. Adverse Possession

 Plaintiffs challenge the sufficiency of the evidence to support a finding in favor of Denison's claim of title to Lot 1. The elements necessary to establish title by adverse possession in a land grant are: (1) actual, visible, exclusive, hostile and continuous possession; (2) under color of title; (3) for ten years. NMSA 1978, § 37–1–21; *see also Esquibel v. Hallmark*, 92 N.M. 254, 586 P.2d 1083 (1978). In addition to these elements, payment of taxes is required under NMSA 1978, Section 37–1–22, (non-land grant property). The district court found

adverse possession in favor of Denison under both of these statutes. In *Marquez v. Padilla*, the supreme court said that in order to establish adverse possession, the proof must be clear and convincing.

 *Color of title.* As to this requirement, plaintiffs contend that no document that would satisfy the ten year possession requirement of Section 37–1–21 and 37–1–22 exists. The earliest documents that any of the defendants or their predecessors could claim showed color of title adverse to the plaintiffs are dated April to August 1973, being the deeds to Consuelo from her brothers and sisters. The suit was filed in March of 1982. Plaintiffs' contentions as to color of title would be correct as to the defendants Concrete who were sued in March of 1982; however, we note that Denison was not named a party defendant and did not intervene until August, 1983. Thus, as to Denison, the trial court's finding as to color of title for more than ten years finds support in the evidence. *See Romero v. Garcia*, 89 N.M. 1, 546 P.2d 66 (1976) (deed does not have to be valid to claim color of title). The critical issue is whether Denison can claim continuous possession under color of title for those ten years.

 *Lack of requisite possession.* The burden of proving title by adverse possession rests with the person who asserts it and all presumptions are in favor of the holder of legal title. *Ward v. Rodriguez*, 43 N.M. 191, 88 P.2d 277 (1939). Plaintiffs assert a lack of proof of exclusive possession for ten years or for any period before 1980 by Denison. Lot 1 was not even purportedly platted until June 6, 1980. Prior to this time, the area was occasionally inhabited by "hippies" or transients.

 Denison contends that although there may be some conflicting evidence, there is still substantial evidence to support the trial court's finding. She claims to hold the property through a deed originating from Consuelo C. de Baca who had possession for more than ten years and had paid taxes on the property after her parents

died. We do not consider payment of taxes. Denison's claim fails for lack of substantial evidence to support a finding of exclusive and continuous possession.

There is no evidence in the record to identify the predecessors of Denison in actual, exclusive and continuous possession before the year 1980 when Consuelo first sold to Concrete Constructors. The trial court made no finding that Consuelo held title through adverse possession. *See Shufflebarger and Associates, Inc.*, (No finding construed as a negative finding). Although testimony indicates that Consuelo sent in the state police three times during the mid-1970's to chase squatters off the property, the record does not reflect an actual, exclusive and continuous possession by Consuelo. Further no improvements were ever made by Consuelo. Denison cannot acquire title by adverse possession through her predecessors since one through whom she traced her claim did not hold the property adversely to the original owner for the requisite period. *See In re Estate of Baca*, 95 N.M. 294, 621 P.2d 511 (1980). No evidence was introduced which would have shown that the transients or "hippies" were in exclusive or continuous possession, or that they even held the land under color of title. Thus, the evidence will not support a finding of actual, visible, exclusive, hostile and continuous possession by Denison or her predecessors. *Marquez v. Padilla*, held that continuous and uninterrupted possession with the exercise of complete dominion, together with manifestation of ownership under color of title for the requisite length of time is necessary to establish title by the possessor. This was not done here.

If any one of the elements necessary to constitute adverse possession is absent, then no title by adverse possession can be found. *Birtrong v. Coronado Building Corp.*, 90 N.M. 670, 568 P.2d 196 (1977).

Because of our disposition, we do not reach the recognition of debt issue raised by defendants Concrete.

We affirm as to the 13.992 acres in favor of plaintiffs and reverse as to that portion of the decree granting Denison 3.0 acres. The case is remanded to the trial court to amend its judgment in conformity with this opinion. Costs on appeal shall be borne by the defendants.

IT IS SO ORDERED.

DONNELLY, C.J., and NEAL, J., concur.