784 P.2d 21

**Newell R. HAYS, and Ruby C. Hays, his wife, Plaintiffs–Appellants,**

v.

**Joe KING, a single man, and Elizabeth F. Silva, a single woman, Defendants–Appellees.**

**No. 18085.**

Supreme Court of New Mexico.

Dec. 14, 1989.

Burrough & Rhodes, F. Randolph Burroughs, Alamogordo, for plaintiffs-appellants.

Gary C. Mitchell, Ruidoso, for defendants-appellees.

## OPINION

SOSA, Chief Justice.

This foreclosure action by vendors Newell R. Hays and Ruby C. Hays (Hays) resulted in a judgment in favor of purchasers Joe King and Elizabeth F. Silva (King[1]). Hays attempted to enforce a promissory note and mortgage upon property he allegedly owned and tried to sell to King. King, having been informed by the title company prior to closing that he already owned the property, counterclaimed to quiet title. After a bench trial, the court dismissed the complaint, rendered void a recorded mortgage from King to Hays, quieted title to 10.688 acres in Joe King subject to an undisputed mortgage to a third party, and awarded King costs and the return of $1,100.00 paid to Hays. We affirm.

The following is a summary of the district court's findings of fact pertinent to the issues on appeal. The 10.688 acres, which are part of a 756–acre tract sold by the original grantors, the Gabaldons, to Lanis L. Bosworth, include a 7.0333–acre tract that is the subject of the mortgage Hays sought to foreclose. The Gabaldon–Bosworth real estate contract was entered into in 1968 and recorded in March 1973. In 1977, a warranty deed was recorded that conveyed the 10.688 acres from Bosworth to Petroleum Leasing Services, Inc. In 1981, a quitclaim deed for the 10.688 acres from Petroleum Leasing to Ivy Heymann was recorded. Heymann conveyed the land to Joe King, who recorded the quitclaim deed in May 1985. Finally, in June 1985, a warranty deed from Gabaldon to Bosworth was recorded in an attempt to clear any clouds upon the title.

When the property was conveyed to King "the only title defect of which the grantor knew (and told to King) was the inability to obtain a partial release of the Gabaldon/Bosworth contract from the Gabaldons' heir * * *. The defect known to defendant King was cured with the completion of the Gabaldon/Bosworth contract." Accordingly, the court concluded: "There were no defects in Joe King's chain of title other than the Gabaldon contract. Under the doctrine of after-acquired title, title passed back through Bosworth to King upon completion of the Gabaldon Contract."

The court also found that there had been several agreements to assign contract rights by Bosworth to Hays, but concluded they were not conveyances of interests in real property. Nevertheless, in June 1978,

---

1. The district court found that Joe King was the sole grantee of the subject property in 1985 through a quitclaim deed from Ivy Heymann. However, because Silva was residing with King on the property, she was included in the negotiations with Hays, and, thus became a named party to the suit.

Hays quitclaimed any interest he might have had in the property back to Bosworth in an attempt to clear any clouds on the, title. In June of 1982, for reasons unknown, Bosworth conveyed the entire 756–acre parcel to a Mr. Franzen who then deeded it to Hays; however, the court concluded these conveyances were outside King's chain of title. The court further concluded that "Bosworth had no interest in the 10.668 (sic) acre tract to convey at that time because of the prior conveyance of Bosworth to Petroleum." This conclusion of law is challenged by Hays, who claims superior title over King through the warranty deed from Franzen that was recorded in 1983.

Hays' main contention is that the district court erred by applying the doctrine of after-acquired title in order to quiet title in King. Hays asserts King should not benefit from this equitable doctrine because he was a remote grantee in the Bosworth–Petroleum chain of title, he possessed knowledge of alleged title defects at the time of the conveyance by Heymann, and he received title by quitclaim deed. Cited as authority are cases supporting the propositions that a quitclaim deed vests only the title held by the grantor at the time of the conveyance, and that the after-acquired title doctrine does not apply to one claiming title under a quitclaim deed. While we have no quarrel with the substance of these cited authorities, we find them inapplicable to the case at bar for the reasons set forth below.

Other issues raised by Hays are whether delivery of a deed, note and mortgage from King to Hays was completed, and whether King is estopped from objecting, or waived objection, to the enforcement of the terms of the mortgage, note and deed. The viability of these issues rests upon the success of Hays' main argument.

The dispositive issue, then, is whether the district court erred by applying the after-acquired title doctrine, which effectively operated to clear any cloud on King's chain of title. It appears that Hays may have misconstrued the court's use of the doctrine as applying exclusively and directly to the Heymann–King conveyance rather than to the entire Gabaldon–Bosworth chain of title.

■ The common law doctrine of after-acquired title is one under which title to land subsequently acquired by a grantor who previously attempted to convey title to the same land, which he then did not own, completely and automatically inures to the benefit of his prior grantee. See *Jenkins v. Huntsinger*, 46 N.M. 168, 181–83, 125 P.2d 327, 335–37 (1942) (Bickley, J., dissenting); *Black's Law Dictionary* 57 (5th ed. 1979); *see generally* 23 Am.Jur.2d *Deeds* § 341 (1983); 31 C.J.S. *Estoppel* § 54 (1964). The doctrine is "nothing more than an enforcement of the grantor's obligation to deliver a good title." *Waterman v. Tidewater Associated Oil Co.*, 213 La. 588, 611, 35 So.2d 225, 233 (1947); *cf. Cox v. Ney*, 580 P.2d 1085 (Utah 1978) (statute provides that earlier conveyance is enforceable in equity when subsequent acquisition of title is obtained by grantor).

■ In general, a grantor is estopped from asserting an after-acquired title against a grantee or those claiming under him. 23 Am.Jur.2d *Deeds* § 342 (1983). An attempt to do so would be tantamount to a denial that the original conveyance passed the interest it purported to pass. *Id. See generally* 31 C.J.S. *Estoppel* §§ 10–54 (1964) (doctrine of after-acquired title is sub-category of general doctrine of estoppel by deed, which precludes party from denying truth of his deed). The grantee or his successors in interest possess the right to assert an estoppel as to the after-acquired property. 31 C.J.S. *Estoppel* at § 54.

It is well established that a deed may have the effect of passing to the grantee a title subsequently acquired by the grantor. A grantor who executes a deed purporting to convey land to which he has no title or to which he has a defective title at the time of the conveyance will not be permitted, when he afterward acquires a good title to the land, to claim in opposition to his deed as against the grantee or any person claiming title under him. This rule is applicable even though the deed was by way of gift. One of the chief theories upon which this

doctrine rests is that the deed operates on the after-acquired title by way of an estoppel, usually deemed to arise from some express or implied covenant or recital, a principle which has long been applied by practically all courts irrespective of equity jurisdiction * * *. [T]o permit a grantor who sells land which he does not own to assert a subsequently acquired title against the grantee or those claiming under him would be to permit the grantor to perpetrate a fraud upon the grantee.

23 Am.Jur.2d *Deeds* § 341 (1983) (footnotes omitted). To accept Hays' argument would be a misapplication of the doctrine.

The warranty deed given by Bosworth to Petroleum Leasing evinced Bosworth's intent to convey the 10.688 acres. Under a conveyance with warranty, Bosworth was seised of the fee and the after-acquired title inured to King as a party claiming under the original grantee. *Cf. Munson v. Goodro*, 124 Vt. 282, 284, 204 A.2d 126, 128 (1964) (in absence of covenants of title, after-acquired interests will not inure to benefit of prior grantee). The district court properly concluded: (1) upon completion of the Gabaldon contract, title passed back through Bosworth, Petroleum Leasing, and Heymann to King; and (2) the attempted conveyance by Bosworth to Franzen in 1982 was outside King's chain of title in light of Bosworth's 1977 original conveyance. Thus, Franzen owned no interest in the property to convey to Hays, and the district court properly dismissed the complaint. Having held that the district court was correct, the collateral issues raised by Hays are found to be without merit.

Therefore, based upon the above, the judgment of the district court is affirmed in its entirety.

IT IS SO ORDERED.

BACA, J., and STEVE HERRERA, District Judge, concur.