2007-NMCA-009

149 P.3d 1009

**Mark RENDLEMAN, Plaintiff–Appellant,**

v.

**Donna HEINLEY, Defendant–Appellee.**

No. 25,358.

Court of Appeals of New Mexico.

Nov. 21, 2006.

Caren I. Friedman, Santa Fe, NM, for Appellant.

Randolph B. Felker, Felker, Ish, Ritchie & Geer, P.A., Santa Fe, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} Plaintiff Mark Rendleman and Defendant Donna Heinley own separate properties having a common boundary. Plaintiff's property is north and Defendant's property is south of that common boundary. Plaintiff claims that Defendant trespassed across the common boundary and onto Plaintiff's property. He asserts that the district court erred in holding that Plaintiff failed to prove trespass.

{2} A second issue concerns the ownership of different property and the validity of Defendant's easement over the property. This property lies to the east of and borders Defendant's property. Two chains of title stemming from one previous owner created this ownership and, therefore, this easement dispute. We refer to this property as the "disputed property." Plaintiff received a deed to the disputed property. But Holly Beth Fassler also received a deed to the disputed property originating from the same previous owner. Fassler granted Defendant an easement as to a part of the disputed property bordering Defendant's property. Plaintiff and Defendant dispute the validity of the easement. Plaintiff asserts that he owns the property in question and that Fassler never owned the property, and therefore Defendant's easement is invalid and her use of the property is a trespass on Plaintiff's property.

{3} As to this disputed property issue, the district court concluded that Plaintiff failed to establish superior title and, applying the after-acquired title doctrine, concluded that Fassler owned the land when she granted Defendant the easement. The doctrine of after-acquired title estops a grantor who obtains title to land after already granting the land from claiming the land as against the grantee. *Hays v. King*, 109 N.M. 202, 204, 784 P.2d 21, 23 (1989). The issue is whether the district court erred in applying the after-acquired title doctrine to estop Plaintiff from claiming title to the land as against Defendant where Plaintiff was not the initial grantor, Defendant's chain of title began before the initial grantor obtained clear title, and Plaintiff's chain of title began after the initial grantor obtained clear title and after Defendant's chain of title.

{4} We will discuss the pertinent facts later in this opinion. We affirm the district court's rulings.

## DISCUSSION

### Claim of Trespass on Plaintiff's Property to Defendant's North

{5} Plaintiff asserts that Defendant trespassed on his property which bounded Defendant's property to the north. At the center of this boundary and trespass issue is the Rio Grande river, which runs along the southern edge of Plaintiff's land. The district court stated in its findings that "[i]n general terms, the Rio Grande river flows between the usable property of [Plaintiff and Defendant] with [Plaintiff's] usable property located to the north of the river and [Defendant's] property to the south." The district court further found that the "actual property line," as determined in a previous quiet title suit between Plaintiff and Defendant, was

located approximately at the southern bank of the Rio Grande with the result

that [Plaintiff] owns the property over which the river flows.... Depending on the height and flow of the river, [Plaintiff's] property may or may not be submerged on the south bank. When the river is low, a small portion of [Plaintiff's] property is exposed on the southern bank. When the river is high, all of [Plaintiff's] property on the south bank is completely submerged.

{6} On appeal, Plaintiff asserts that Defendant trespassed in two ways. One way was that Defendant's wall, although built on her property, in effect caused or required a trespass on his land because a gate in the wall and steps leading from the gate could not be used except to enter upon Plaintiff's land. The other way was that Defendant placed a hose or hoses over her wall and into the river in order to pump water from the river for irrigation purposes.

{7} The district court found:

48. The credible evidence before the Court fails to establish that [Defendant] has constructed walls or any other structures on [Plaintiff's] property.

. . . .

52. [Defendant] did place hoses into the Rio Grande river for the purpose of irrigating her property. The credible evidence before the Court fails to establish that the hoses were actually placed on the ground owned by [Plaintiff]. To the extent that the hoses may have touched the property owned by [Plaintiff], [Plaintiff] was not damaged by such touching of his property.

The court concluded that Plaintiff failed to establish trespass.

{8} On appeal, Plaintiff claims that the district court's determination that Defendant did not trespass by placing the hoses in the river is inconsistent with the court's finding that Plaintiff owned a small portion of land on the south bank of the river as there is no other way for the hoses to go from Defendant's property to the river than to traverse a strip of Plaintiff's land. Plaintiff also claims that finding number 52 is inconsistent with the earlier boundary adjudication in the first quiet title action. Finally, Plaintiff argues that the district court's determination that Plaintiff failed to establish any damage

even if a trespass occurred is contrary to trespass law, which Plaintiff posits requires at least nominal damages if there is an unauthorized entry.

{9} Findings of fact supported by substantial evidence will not be disturbed on appeal. *Abbinett v. Fox*, 103 N.M. 80, 84, 703 P.2d 177, 181 (Ct.App.1985). Substantial evidence is such evidence "that a reasonable mind would find adequate to support a conclusion." *Sitterly v. Matthews*, 2000–NMCA–037, ¶ 22, 129 N.M. 134, 2 P.3d 871.

{10} We conclude that there was substantial evidence in the record to support the district court's findings of fact and that the findings support the court's determination that Plaintiff failed to establish that Defendant trespassed on Plaintiff's property. The district court's findings essentially indicate that Plaintiff failed to meet his burden of establishing a preponderance of evidence that Defendant trespassed. We cannot overturn the determination with respect to ·Defendant or her guests entering onto Plaintiff's land by using the wall and steps or as to the hoses because of the district court's pivotal finding, which is not challenged, that when the river is high all of Plaintiff's property on the river's south bank is submerged. An unchallenged finding is binding on appeal. *Stueber v. Pickard*, 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991). To the extent that there may have been evidence of a trespass, the district court found that it was not credible when it determined that the "credible evidence ... fail[ed] to establish" a trespass. "[W]here there is conflicting evidence, the trial court, as fact finder, resolves all disparities in the testimony and determines the weight and credibility to be accorded to the witnesses." *New Mexicans for Free Enter. v. City of Santa Fe*, 2006–NMCA–007, ¶ 71, 138 N.M. 785, 126 P.3d 1149 (internal quotation marks and citation omitted). We note that there was not any testimony or other evidence as to the height and flow of the river during the complained of hose entries or when Defendant or her guests accessed the river using the steps. Further, while Plaintiff's expert testified during direct examination that Defendant's wall was along the boundary where the hoses were and thus

the hoses would have to have crossed Plaintiff's land to reach the river, on cross-examination Plaintiff's expert conceded that the wall may have been on Defendant's land set back several feet from the boundary. As such, we cannot overturn the district court's finding that there is no credible evidence that the hoses resulted in a trespass on Plaintiff's property.

{11} As we are upholding the district court's findings and determination that Plaintiff failed to establish trespass, we do not address Plaintiff's argument that the district court misinterpreted the law by determining that even if there were a trespass there were no damages. The district court's determination that even if there were a trespass there were no damages was in the form of an alternative determination to its finding that there simply was no trespass. Because we have upheld the court's finding that there was no trespass, there is no need to address the alternative determination. *See Antillon v. N.M. State Highway Dep't*, 113 N.M. 2, 8, 820 P.2d 436, 442 (Ct.App.1991) (refusing to address a party's argument based on case law where, based on factual findings which were supported by substantial evidence, addressing the issue would not change the outcome of the case).

### Claim of Ownership of and Trespass on the Disputed Property East of Defendant's Property

{12} Two chains of title leading from Guadalupe T. Lujan have created the question of whether Defendant's easement on the disputed property is valid or whether Plaintiff owns the disputed property and Defendant has trespassed. The earlier of the two separate chains of title to the disputed property is traced from Guadalupe T. Lujan and her husband, J.O. Lujan, Sr. The Lujans conveyed the disputed property to Brian Patrick Bennett in 1958. The disputed property was eventually conveyed to Fassler. While Fassler held title to the property, she granted Defendant an easement. The latter of the two chains of title indicates that in 1967 Domitilia Montoya conveyed the disputed property to Guadalupe T. Lujan. Thereafter, Guadalupe T. Lujan conveyed the disputed property to her daughter Margaret T.

Lujan. This chain of title eventually led to Plaintiff.

{13} The district court applied the after-acquired title doctrine in favor of Fassler. "The common law doctrine of after-acquired title is one under which title to land subsequently acquired by a grantor who previously attempted to convey title to the same land, which he then did not own, completely and automatically inures to the benefit of his prior grantee." *Hays*, 109 N.M. at 204, 784 P.2d at 23.

> [A] deed may have the effect of passing to the grantee a title subsequently acquired by the grantor. A grantor who executes a deed purporting to convey land to which he has no title or to which he has a defective title at the time of the conveyance will not be permitted, when he afterward acquires a good title to the land, to claim in opposition to his deed as against the grantee or any person claiming title under him.... One of the chief theories upon which this doctrine rests is that the deed operates on the after-acquired title by way of an estoppel, usually deemed to arise from some express or implied covenant or recital.... [T]o permit a grantor who sells land which he does not own to assert a subsequently acquired title against the grantee or those claiming under him would be to permit the grantor to perpetrate a fraud upon the grantee.

*Id.* at 204–05, 784 P.2d at 23–24 (internal quotation marks and citation omitted).

{14} Whether the doctrine of after-acquired title applies is a question of law, which we review de novo. *See id.* at 204, 784 P.2d at 23 (noting that the doctrine of after-acquired title is a sub-category of the doctrine of estoppel by deed); *see also Mannick v. Wakeland*, 2005–NMCA–098, ¶ 27, 138 N.M. 113, 117 P.3d 919 (stating, in the context of equitable estoppel, "[t]he question of whether, on a particular set of facts, the district court is permitted to exercise its equitable powers is a question of law" (internal quotation marks and citation omitted)).

{15} In *Hays*, our Supreme Court adopted and applied the after-acquired title doctrine where, as in the present case, there were two

chains of title originating from a common grantor. Gabaldon entered into a real estate contract to sell the land in question to Bosworth in 1968, which was recorded in 1973. *Hays,* 109 N.M. at 203, 784 P.2d at 22. The first chain of title began when Bosworth conveyed the land in 1977 and the land was eventually conveyed to the defendant, King. *Id.* The second chain of title began when Bosworth conveyed the land to another in 1982 and this chain of title led to the plaintiff, Hays. *Id.* at 203–04, 784 P.2d at 23. "Finally, . . . a warranty deed from Gabaldon to Bosworth was recorded," and the district court found that this cleared any defect in the Gabaldon–Bosworth real estate contract. *Id.* at 203, 784 P.2d at 22. The Court applied the doctrine of after-acquired title to estop Hays from asserting title against King. *Id.* at 205, 784 P.2d at 24.

{16} In the present case, addressing *Hays,* Plaintiff argues that, while the Lujans would have been estopped from asserting title against Bennett, the after-acquired title doctrine does not necessarily bind a subsequent purchaser, such as Plaintiff, from the original owner. Stating the law to be that "[w]henever there are conflicting chains of title to real property, courts must determine which chain of title is superior[,]" Plaintiff contends that his title is superior to that of Fassler. He argues that the after-acquired title doctrine controls only when it is the originating grantor that asserts ownership rights against the grantor's prior grantee. Thus, according to Plaintiff, when the rights of an originating owner's subsequent grantee have intervened, the inquiry changes, focusing only on which of the two title holders has the superior title.

{17} Plaintiff asserts superior title based on two circumstances: (1) a title originating from a United States patent, and (2) the fact that the deeds in the Fassler chain of title contain only vague property descriptions that cannot be located on the ground, thereby requiring that the more definite property description in the chain leading to Plaintiff's deed be the deciding factor in his favor. Plaintiff downplays *Hays,* because *Hays* did not specifically address the issue of superior title. Plaintiff argues that in *Board of County Commissioners v. Ogden,* 117 N.M. 181, 186, 870 P.2d 143, 148 (Ct.App.1994), this Court refused to apply the after-acquired

title doctrine. In *Ogden,* this Court quieted title in the party with superior title and Plaintiff characterizes *Ogden* as hinging on the fact that the prevailing party held title from a United States patent.

{18} We find *Hays* to be instructive and Plaintiff's reliance on *Ogden* to be misplaced. While *Hays* admittedly did not specifically address the issue Plaintiff raises here, the Court in *Hays* unquestionably applied the doctrine to estop a subsequent grantee from asserting a superior title as against one claiming under the prior grantee. *See Hays,* 109 N.M. at 203–05, 784 P.2d at 22–24. The *Hays* Court did not limit the after-acquired title doctrine to estop only the original grantor as Plaintiff would have us do. *Id.* Plaintiff cites no authority that supports his position that only the original grantor, and not a subsequent grantee from the original grantor, can be estopped from asserting title against a prior grantee from the original grantor. As for *Ogden,* relied on by Plaintiff, contrary to the circumstances in the present case, it became clear on appeal in *Ogden* that under the facts of that case, the doctrine of after-acquired title could not apply because there had been no attempt by the grantor to convey the property in question to one of the parties. *See Ogden,* 117 N.M. at 186, 870 P.2d at 148. The decision of this Court was not, therefore, based on two conflicting titles from two chains originating with an original grantor, but was instead based solely on the relative strengths of the two deeds, one emanating from a United States patent and the other consisting of only a quitclaim deed from a man who never owned the land. *See id.* at 185–86, 870 P.2d at 147–48. We see no basis on which to hold that the after-acquired title doctrine has no application in the present case.

{19} Cases from other jurisdictions show that, since early on, the after-acquired title doctrine was applied to vest title in the first grantee and those holding under him where there were two chains of title from one initial grantor. For example, in *Doe v. Roe,* 1866 WL 955, *1 (Del.Super. Ct. Fall Sess. 1866), the Menoughs conveyed the land to Dowdall in 1850, warranting to defend the grantee against all persons claiming by or from the

grantors. The Menoughs obtained title to the land from the Boyds in 1851. *Id.* In 1853 the Menoughs mortgaged the same land and it was eventually bought by Potts at a sheriff's sale after the Menoughs stopped paying on the mortgage. *Id.* The court held that title passed to Dowdall, the original grantee, when the Menoughs obtained title from the Boyds, and that the Menoughs and all subsequently claiming under them, including Potts, who was a privy in estate, were estopped from claiming title based on the warranty in the deed to Dowdall. *Id.* at *6. The court elaborated on the policy behind applying the after-acquired title doctrine, a form of estoppel, to estop a subsequent grantee:

> Estoppels are said to be of two kinds-the one personal in its character, operating as a personal rebutter and preventing the grantor, and those claiming under him, from asserting title, or contradicting the intent and effect of his deed, which Lord Coke calls a "kind of estoppel;" the other, however, is of larger scope, for whilst it carries with it all the qualities and attributes of the former, it also possesses the additional function of operating an actual transfer of an after acquired estate. . . .
>
> . . . .
>
> Where one who has no title conveys land with warranty, and afterward acquires title, and conveys to another, the second grantee is estopped to say that the grantor was not seized at the time of the first conveyance. And where both parties claim under the same person they are privies in estate, and can not, as such, deny the title of the grantor at the time of the first conveyance; and the estoppel working upon the estate, binds both parties and privies. In the language of the court in the case of *Douglass v. Scott*, "the obligation created by the estoppel, not only binds the parties making it, but all persons privy to him; the legal representatives of the party,-those who stand in his situation by act of law,-and all those who take his estate by contract stand in his stead, and subject to all the consequences which accrue to him. It adheres to the land, is transmitted with the estate, it becomes a muniment of title, and all who afterward acquire, take it subject to the burden

which the existence of the fact imposes on it."

*Id. at* *3, 5 (citation omitted).

{20} Similarly, in *Bernardy v. Colonial & United States Mortgage Co.*, 17 S.D. 637, 98 N.W. 166 (1904), the court employed the doctrine of after-acquired title and the rule that a subsequent purchaser with actual or constructive notice that the land had already been sold cannot claim title to the land. In that case, the grantor deeded the land to the initial grantee, subsequently mortgaged it to another party who eventually foreclosed the mortgage, and then finally obtained title to the land. *Id.* at 167. The court held that when the grantor obtained title to the land, title immediately vested in the initial grantee, and the grantor had no interest in the property at the time of the mortgage, thus the mortgagee had no interest in the property. *Id.* at 170. And in *Morrison's Executor v. Caldwell*, 21 Ky. 426, 1827 WL 1584, *6 (Ky.Ct.App. Oct. 4, 1827), the court held "that where a person conveys and warrants, and has no title, and afterwards acquires title, this after-[ac]quired title enures to the benefit of, and passes to his alienee[.] And in the case of two conveyances by him when he had no title, we can have no hesitation in saying that the title enures to the benefit of, and passes to the first grantee, if he be a fair purchaser." (Citations omitted).

{21} We find the rationales in the cited cases persuasive and believe that it is proper to apply the after-acquired title doctrine to estop Plaintiff. Additionally, given that application of the after-acquired title doctrine is appropriate, we reject Plaintiff's arguments underlying his contention that this case should be resolved in his favor by comparing the strengths of the two chains of title. First, assuming without addressing or deciding that, generally, a chain of title stemming from a patent might create a superior title, in this case, application of the after-acquired title doctrine vests title in Defendant, not Plaintiff, notwithstanding the patent Plaintiff claims for superior title. When good title was granted to Guadalupe T. Lujan, it immediately vested in the prior grantee or the person holding under him based on the conveyance from Guadalupe T. Lujan and her

husband. After making the initial conveyance to Bennett, Guadalupe T. Lujan had nothing more to convey and, because Plaintiff asserts his claims under a subsequent conveyance, his claim to having a superior title fails.

{22} Second, we are unpersuaded by Plaintiff's argument that the after-acquired title doctrine cannot defeat his title either because the Fassler chain is deficient as a result of void deeds due to defective property descriptions, or because his title is superior as a result of a more definite property description in the deeds in his chain of title. We reject this argument because we conclude that the district court did not abuse its discretion in rejecting Plaintiff's proposed finding that the deeds in Defendant's chain of title were vague.

{23} Whether a description in a deed sufficiently identifies the land it attempts to convey is a question of fact which we do not disturb if there is substantial evidence in the record to support the district court's finding. *See Komadina v. Edmondson,* 81 N.M. 467, 468, 470, 468 P.2d 632, 633, 635 (1970) (reviewing the district court's finding of fact for substantial evidence); *Blumenthal v. Concrete Constructors Co.,* 102 N.M. 125, 129, 692 P.2d 50, 54 (Ct.App.1984) (same).

{24} In *Komadina,* 81 N.M. at 468, 468 P.2d at 633, our Supreme Court affirmed the lower court's conclusion that certain deeds were "void for insufficiency of description of the land they purport to convey." The district court based this conclusion on its finding, challenged by the plaintiffs, that "[t]he land described in the complaint ... cannot be located or identified solely from the deeds" in question. *Id.* (internal quotation marks omitted). In doing so, the Supreme Court pointed out that the "[p]laintiffs rel[ied] solely upon a paper title." *Id.* The deeds were a series of four deeds describing land as being bounded by a nameless road on the north, the property of another person on the east, another nameless road on the south, and the property of a separate person on the west. *Id.* at 469, 468 P.2d at 634. The plaintiffs' expert found the land by referring to a plat given to him by a member of the board of the town, but the deeds did not refer to the plat. *Id.* at 470, 468 P.2d at 635.

There was evidence that no roads were in existence when the deeds were executed, that the area had not been platted, and that the land could not be located on the ground from the information contained in the deeds or based on extrinsic information. *Id.* at 469–70, 468 P.2d at 634–35. The Supreme Court did not disturb the challenged finding of fact, concluding that it was based on substantial evidence. *Id.* at 470, 468 P.2d at 635.

{25} However, where a district court has found that a deed did sufficiently describe the land in question, and there was substantial evidence supporting that conclusion in the record, appellate courts have refused to overturn the district court's finding. In *Sternloff v. Hughes,* 91 N.M. 604, 605, 608, 577 P.2d 1250, 1251, 1254 (1978), our Supreme Court upheld the lower court's judgment quieting title in the plaintiff despite the defendants' claim that the description of the property in the deed was vague and therefore void. The Supreme Court found substantial evidence supporting the findings of fact setting the boundaries of the land based upon the deed itself and extrinsic evidence offered at trial. *Id.* at 608, 577 P.2d at 1254. The Court stated "an indefinite and uncertain description may be clarified by subsequent acts of the parties and other extrinsic evidence." *Id.* at 606, 577 P.2d at 1252.

{26} Similarly, in *Blumenthal,* this Court upheld the district court's judgment quieting title in the plaintiffs where the district court found the description in the deed adequate and its finding was supported by evidence in the record. 102 N.M. at 129, 692 P.2d at 54. In *Blumenthal,* a surveyor had testified "that the identity of several of the adjoining landowners named in the deed's description were ascertained and thus boundaries could be established." *Id.* We also reiterated the general rule that "if the description of the premises given in a deed affords sufficient means of ascertaining and identifying the land intended to be conveyed, it is sufficient to sustain the conveyance." *Id.* at 129–30, 692 P.2d at 54–55.

{27} In this case, the description in the deed from the Lujans to Bennett, as best as we can make out from the poor copy in the record, is as follows:

Bounded on the North by the Rio Grande; on the West by land formerly of Antonio Roybal now Brown; on the South by ___ Highway N. ___, and on the East by an orchard retained by the seller, which is a part of La Cienega proper and is bounded by a barbed wire fence which starts on the Highway on the South and runs approximately North-east from Highway Stake ___ + ___ 1.

The next two deeds, which lead to Fassler, are legible and complete, and use nearly the same description.

They read:

Bounded on the North by the Rio Grande River; on the West by land formerly of Antonio Roybal, now Brown; on the South by U.S. Highway 64; and on the East by an orchard and land of J.O. Lujan and Guadalupe T. Lujan, which is a part of La Cienega proper and is bounded by a barbed wire fence which starts on the highway on the South and runs approximately Northeast from Highway stake 234 + 81[.]

{28} All three of these deeds also refer to three earlier deeds, which led to the Lujans. In the district court, both Plaintiff's expert and Defendant's expert testified that the descriptions in the three earlier deeds were vague. Plaintiff argues that because the descriptions in the earlier deeds did not sufficiently identify the land they were conveying and the later deeds leading from the Lujans to Fassler referred to the earlier deeds that the later deeds were vague. Plaintiff argues that we should find the deeds void based on this vagueness just as the court did in *Komadina.*

{29} We disagree with Plaintiff because given the district court's findings and the standard of review, the present case is more like *Sternloff* and *Blumenthal* than *Komadina.* Plaintiff submitted a proposed finding of fact that "[t]he warranty deed of December 26, 1958 from J.O. and Guadalupe Lujan to Brian Patrick Bennet and recorded at Book 59, Page 106 does not specify boundaries or extrinsic evidence from which the property conveyed can be ascertained." The district court did not adopt this proposed finding and instead concluded that Plaintiff failed to establish title to the disputed property and that Fassler owned the disputed property when she granted the easement to Defendant. This rejection of Plaintiff's factual contentions constituted a finding against Plaintiff. *See Landskroner v. McClure,* 107 N.M. 773, 775, 765 P.2d 189, 191 (1988) (holding that the failure to make a finding of fact is regarded as a finding against the party seeking to establish the fact).

{30} There is substantial evidence in the record from which the district court could reasonably conclude that the descriptions in the deeds were not vague. Defendant's expert testified that because of the reference to the highway marker and the river she was able to identify the disputed property on a plat. Plaintiff's expert testified that he could place the property based on the deed from the Lujans to Bennett. J.P. Lujan, the son of the Lujans, also testified regarding the fence bounding the land, the land owners or former land owners bounding the land, and the general area of the land.

{31} As there was substantial evidence in the record that the deeds adequately described the disputed property, we will not disturb the district court's determination that Fassler owned the disputed property at the time she granted the easement to Defendant. Therefore, Defendant's easement is valid, her use of the easement did not constitute a trespass, and Plaintiff's claim of trespass on the disputed property fails.

**CONCLUSION**

{32} We affirm the district court.

{33} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and RODERICK T. KENNEDY, Judge.