**Certiorari Denied, March 7, 2012, No. 33,449**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-038**

**Filing Date: January 12, 2012**

**Docket No. 30,286**

**RABO AGRIFINANCE, INC.,**
**Successor in Interest to Farm**
**Credit Bank of Texas,**

      **Plaintiff-Appellant/Cross-Appellee,**

**v.**

**TERRA XXI, LTD., a Texas limited partnership,**
**composed of VEIGEL CATTLE CO., as general**
**partner; ROBERT WAYNE VEIGEL, a/k/a BOB**
**W. VEIGEL; ELLA MARIE WILLIAMS VOGEL,**
**a/k/a ELLA MARIE VEIGEL; VEIGEL CATTLE**
**CO., a Texas corporation; VEIGEL FARM PARTNERS,**
**a Texas general partnership, d/b/a VEIGEL PARTNERS;**
**BOB VIEGEL, INC., a Texas corporation, STEVE**
**VEIGEL, INC., a Texas corporation; VEIGEL-KIRK,**
**INC., a Texas corporation; VICKI VEIGEL, INC., a Texas**
**corporation; VEIGEL FARMS, INC., a Texas corporation;**
**TERRA PARTNERS, a Texas general partnership; BURNETT**
**& VEIGEL, INC., a Texas corporation, as general partner of**
**Terra Partnership, a Texas general partnership; and ALL**
**UNKNOWN CLAIMANTS OF INTEREST IN THE PREMISES**
**ADVERSE TO THE PLAINTIFF,**

      **Defendants-Appellees/Cross-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Drew D. Tatum, District Judge**

Rowley Law Firm, L.L.C.
Richard F. Rowley II
Richard F. Rowley III
Clovis, NM

1

for Appellant

Garrett Law Firm, P.A.
Michael T. Garrett
Clovis, NM

for Appellees

**OPINION**

**SUTIN, Judge.**

**{1}**     In its foreclosure action, a mortgagee sought to enlarge its mortgage lien from a 50% interest to a 100% interest based on the doctrine of after-acquired title.  The district court held against the mortgagee.  The court also dismissed counterclaims.  We hold that the court erred in granting summary judgment, and we remand for further proceedings on the issue of the applicability of the after-acquired title doctrine in circumstances in which a mortgage contains mortgage covenants.  And we hold that the counterclaimants failed to preserve their cross-appeal issues.

**BACKGROUND**

**{2}**     Plaintiff Rabo Agrifinance, Inc. (Rabo) held two 1994 promissory notes (the notes) secured by a 1994 first mortgage (the mortgage) covering property located in Quay and Guadalupe Counties, New Mexico (the property).[1]  The mortgage was recorded in both Quay and Guadalupe Counties.  When it granted the mortgage, Defendant Terra XXI, Ltd. (Terra), a Texas limited partnership, owned an undivided 50% interest in the property.  In 1999 Terra received a warranty deed to the property that effectively placed in Terra a 100% ownership interest in the property.

**{3}**     In December 2005, Rabo sued in the United States District Court in Texas to collect amounts due on the notes (the Texas suit).  The federal district court entered summary judgment in October 2006 in favor of Rabo for a total amount prior to interest, costs, and attorney fees, of $3,958,577.97, and the judgment was affirmed by the Fifth Circuit Court of Appeals in December 2007.  *See Rabo Agrifinance, Inc. v. Terra XXI Ltd.*, 2006 WL 2828748 (N.D. Tex. 2006), *aff'd* 257 Fed. Appx. 732, 2007 WL 4305378 (5th Cir. 2007) (per curiam).  Rabo domesticated the Texas suit judgment in New Mexico in December 2006, and in January 2007, Rabo recorded transcripts of the judgment in Quay and Guadalupe Counties.

---

[1] Rabo was successor-in-interest to a number of entities, starting with Farm Credit Bank of Texas (Farm Credit), the mortgagee in the 1994 loan transactions.

2

**{4}**     Before us now is Rabo's suit against Terra and others (Defendants) filed in August 2007 in New Mexico district court asking that the $3,958,577.97 judgment awarded in the Texas suit on the 1994 notes (less a $200,000 credit) be confirmed and seeking foreclosure of the mortgage covering the property. Defendants filed counterclaims in five counts: Count I (failure to act in good faith), Count II (prima facie tort), Count III (mortgages extinguished), Count IV (civil conspiracy), and Count V (quiet title and foreclosure). Summary judgment proceedings concluded with the district court confirming the judgment amount and, after determining that Rabo "ha[d] a first mortgage lien on an undivided 50% interest" and that "[a]s a matter of law, the doctrine of after-acquired title is inapplicable to this matter, and [Rabo] does not have a 100% mortgage lien interest[,]" the district court entered summary judgment in favor of Rabo on its first mortgage lien interest as to an undivided 50% interest in the property. With respect to Defendants' counterclaims, the court held that "[r]es judicata and collateral estoppel bar the counterclaims of . . . Defendants[] and, as such, no genuine issues of material fact exist as to Defendants' counterclaims[,]" granted Rabo's motion for summary judgment regarding the counterclaims, and dismissed the same.

**{5}**     Rabo asserts on appeal that the district court erred in granting it judgment consisting of only a 50% mortgage lien interest in the property. We discuss Defendants' cross-appeal later in this Opinion. No party seeks reversal on the ground that a genuine issue of material fact existed precluding summary judgment.

**DISCUSSION**

**Rabo's Appeal**

**{6}**     Rabo asserts that, under the doctrine of after-acquired title with its estoppel element, the mortgage should have been foreclosed based on a 100% lien interest in the property. Based on the nature of the district court's ruling and undisputed facts, the issues before us are legal ones that we review de novo. *Barreras v. State Corr. Dep't*, 2003-NMCA-027, ¶ 5, 133 N.M. 313, 62 P.3d 770.

**{7}**     Rabo acknowledges that, at the time the mortgage was granted in 1994, Terra had title to only 50% of the property. But Rabo points out that in 1999 Terra obtained a warranty deed to the remaining 50% of the property from the Stephen Samuel Williams Testamentary Trust (the Williams Testamentary Trust)[2] and that this remaining 50% enured to Rabo's benefit under the doctrines of after-acquired title and estoppel. Rabo's claim to entitlement

---

[2] On May 13, 1999, the Estate of Stephen Samuel Williams (the Estate of Williams) conveyed its 50% ownership interest in the property to the Williams Testamentary Trust. On June 8, 1999, the Williams Testamentary Trust conveyed that same 50% interest to Terra. On November 1, 2006, effective September 12, 2006, Terra conveyed that same interest to Terra Partners, a Texas general partnership (Terra Partners).

to a 100% mortgage lien interest is rooted in the language in the mortgage stating that Terra granted, mortgaged, and conveyed its interest in and to the property "with mortgage covenants."

**{8}** Rabo explains that the meaning of "warranty covenants" in NMSA 1978, Section 47-1-37 (1947), titled "[e]ffect of warranty covenants in conveyances[,]" is that the grantor of real estate represents and agrees "'that he is lawfully seized in fee simple of the granted premises[,]'" that the premises are free of all encumbrances, and that he "'shall warrant and defend the [premises] to the grantee . . . forever against the lawful claims and demands of all persons.'" Rabo then points to NMSA 1978, Section 47-1-40 (1947), titled "[c]onstruction of 'mortgage covenants[,]'" which reads:

> In a mortgage or deed of trust by way of mortgage of real estate "mortgage covenants" shall have the full force and meaning and effect of the following words and shall be applied and construed accordingly: "the mortgagor for himself, his heirs, executors, administrators[,] and successors, covenants with the mortgagee and his heirs, successors[,] and assigns that he is lawfully seized in fee simple of the granted premises; that they are free from all encumbrances; that the mortgagor has good right to sell and convey the same; and that he will, and his heirs, executors, administrators[,] and successors shall, warrant and defend the same to the mortgagee and his heirs, successors[,] and assigns forever against the lawful claims and demands of all persons."

Rabo asserts, based on Section 47-1-40[3] and the similar language in Section 47-1-37, that "with mortgage covenants" Terra represented and agreed that it was lawfully seized in fee simple of the granted, mortgaged, and conveyed premises and that the property was free from all encumbrances. Rabo further asserts that Terra warranted and agreed to defend against the lawful claims and demands of all persons.

**{9}** Based on these circumstances, Rabo argues that Terra is estopped from asserting its after-acquired 50% ownership interest in defense of Rabo's pursuit of foreclosure on 100% of the property. In support of its position, Rabo cites New Mexico's mainstay after-acquired

---

[3] Although not discussed by Rabo, we note two other pertinent sections, namely, NMSA 1978, Sections 47-1-39 (1947) and 47-1-44 (1975). Section 47-1-44 establishes "[c]onveyancing forms[,]" including forms for a mortgage and a deed of trust. The form for mortgages states that the grantor grants the real estate "with mortgage covenants." Section 47-1-44(6). After setting out the effect of warranty and special warranty covenants in conveyances of real estate in Section 47-1-37 and NMSA 1978, Section 47-1-38 (1947), Section 47-1-39 discusses the effect of a "deed in substance" following the forms entitled "mortgage" or "deed of trust[.]" Section 47-1-40 then sets out the meaning of "mortgage covenants" in "a mortgage or deed of trust by way of mortgage of real estate."

4

title case, *Hays v. King*, 109 N.M. 202, 784 P.2d 21 (1989), which states: "The common law doctrine of after-acquired title is one under which title to land subsequently acquired by a grantor who previously attempted to convey title to the same land, which he then did not own, completely and automatically inures to the benefit of his prior grantee." *Id*. at 204, 784 P.2d at 23. Recognizing, however, that no New Mexico case has directly addressed the issue whether mortgage covenants in a mortgage covers an ownership interest in the property "described in the mortgage that is acquired by the mortgagor after the execution of the mortgage[,]" Rabo goes beyond *Hays* to out-of-state cases that Rabo contends support its position. *Cf. C & L Lumber & Supply, Inc. v. Tex. Am. Bank/Galeria*, 110 N.M. 291, 298, 795 P.2d 502, 509 (1990) ("[A]lthough other jurisdictions have applied the doctrine of after-acquired title to cure defects in mortgages, the application of the doctrine to documents void at the time of execution for failure to join both spouses has been rejected in New Mexico.").

**{10}** Language in some of the cases cited by Rabo tends to support its position. For example, the court in *Tompkins State Bank v. Niles*, 537 N.E.2d 274, 278 (Ill. 1989), stated: "The after-acquired-title doctrine can be applied to mortgages as well as to conveyances by warranty deed, when the mortgage instrument contains covenants of title. A mortgage which contains the words "and warrants" has been held to be equivalent to a mortgage containing all covenants of title." (Citations omitted.) Also, in *Alabama Home Mortg. Co. v. Harris*, 582 So. 2d 1080, 1083 (Ala. 1991), the court stated: "[I]n their mortgage [the mortgagors] warranted the title to the property that was conveyed by the mortgage. Because of these warranties, any after-acquired interest of the [mortgagors] would pass to the [mortgagees], as the [mortgagors] are estopped to deny the title of the [mortgagees]."

**{11}** Terra points out that the after-acquired-title doctrine has not been applied in New Mexico to mortgage interests and that New Mexico has not enacted an after-acquired-interest statute as other states have done. Terra argues that the after-acquired-title doctrine set out in *Hays* "is nothing more than an enforcement of the grantor's obligation to deliver a good title" and shows that Colorado's after-acquired-interest statute was held inapplicable because a deed of trust did not involve a transfer of title and "did not purport to convey an estate in fee simple absolute." *Premier Bank v. Bd. of Cnty. Comm'rs*, 214 P.3d 574, 577 (Colo. App. 2009) (internal quotation marks omitted). Terra also argues that, different from a conveyance of title, a mortgage is personal property and is merely a lien, and it does not pass title to the mortgaged property. In addition, Terra argues that the controlling language in the mortgage is "all its interest in and to" the property, which at the time of the grant was only 50%, and that Terra could not encumber a property interest that was not its own. *See Texas Am. Bank/Levelland v. Morgan*, 105 N.M. 416, 417, 733 P.2d 864, 865 (1987) (stating that "jurisdictions [that] have decided this question . . . have uniformly agreed that one cotenant may not encumber the other cotenant's interest without consent" and that "a grantor can only give that which he owns"). Finally, Terra argues that Rabo's January 2007 transcribed Texas suit judgment attached to the property only after Terra's after-acquired 50% interest had been conveyed by Terra to Terra Partners in November 2006. Thus, according to Terra, Rabo's judgment lien could have been effective only as to the interest still owned by Terra in January 2007 and was not effective as to Terra Partner's ownership interest acquired from

5

Terra in November 2006. For the reasons that follow, we are not persuaded by Terra's arguments.

**{12}** First, Terra's judgment lien priority theory holds no water. Rabo's lien priority in this case was based on foreclosure of its first mortgage, not a foreclosure of its judgment lien. Second, we see no reason why, as a general rule, the after-acquired-title or -interest doctrine cannot be applied when mortgage interests are involved and a mortgagor grants a mortgage with "mortgage covenants" on property to which the mortgagor has a defect in its title at the time of the grant of the mortgage but later acquires good title to the mortgaged property. It appears that this general rule is well-established at common law. *See, e.g., Orr v. Stewart*, 7 P. 693, 694 (Cal. 1885) ("It is . . . well settled that when a mortgage of land is made, purporting to convey the land in fee, any title afterwards acquired by the mortgagor will feed the mortgage and inure to the benefit of the mortgagee[.]"); *Roderick v. McMeekin*, 68 N.E. 473, 477 (Ill. 1903) ("It is well settled that, when one gives a mortgage upon land to secure a debt, he is estopped by the recitals in his contract creating the lien from denying his title to the mortgaged premises." (internal quotation marks and citation omitted)); *Decker v. Caskey*, 3 N.J. Eq. 446, 1836 WL 2149, *3 (N.J. Ch. 1836) ("If a mortgage be made of an estate to which the mortgagor has not a good title, and then he who has the real title conveys to the mortgagor . . . with a good title, the mortgagee will be entitled in equity to the benefit of it[.]"); *Weber v. Laidler*, 66 P. 400, 401 (Wash. 1901) ("The principle is too well established to call for discussion that, ordinarily, if one conveys or mortgages land to which he has then no title, his after-acquired title will inure to the benefit of his grantee or mortgagee."); 4 Tiffany, *Law of Real Property*, ch. 29, § 1231, p. 1107-08 (3d ed. 1975) ("The doctrine of . . . after-acquired title has been applied in the case of a mortgage as well as in that of an absolute conveyance, more particularly when the mortgage instrument contains a covenant of warranty or other covenant. . . . There appears to be no difference, as regards the doctrine of estoppel, between the principles applicable to a mortgage and to an absolute conveyance[.]"). *See generally* Annot., *Nature of Conveyance or Covenants Which Will Create Estoppel to Assert After-Acquired Title or Interest in Real Property*, 58 A.L.R. 345, 354-58, 360-98, 422-28 (1929) (indicating that a mortgage with covenants of general warranty and not intended as a quitclaim of an interest affords a basis for estoppel against assertion of an after-acquired title or interest). Third, we reject Terra's unsupported argument that an after-acquired title theory cannot apply in jurisdictions, such as New Mexico, in which a mortgage is considered a lien and as such does not pass title. Not only is Terra's argument unsupported by any authority, Terra fails to distinguish the cases cited by Rabo in support of its argument to the contrary. The issue is not the character of a mortgage but instead is the enforcement of a mortgagor's covenant of ownership of the property described in the mortgage and the equitable notion that, in certain circumstances, breach of that covenant can and ought to be cured through an after-acquired title theory.

**{13}** Terra also argues that the after-acquired title doctrine is inapplicable in this case because the original mortgagee, Farm Credit, was on notice through a 1994 title opinion that the Estate of Williams held a 50% ownership interest in the property. *Cf. Morgan*, 105 N.M. at 418, 733 P.2d at 866 ("Our decision is buttressed by the evidence that at the time [one of

6

the defendants] executed the mortgage, the [plaintiff] was on constructive notice, by reason of recordation, that [the defendant] was merely a joint tenant."). At first glance, Terra's position would appear to have merit. But a study of the parties' positions during the proceedings take us down a different path. In that regard, we note the following. In its summary judgment argument in the district court, Rabo acknowledged that when the mortgage was executed Terra had title to only 50% of the property. In response, Terra stated that Farm Credit knew that Terra owned only a 50% interest and knew that the Williams Testamentary Trust owned the other 50% interest in the property, citing the 1994 title opinion obtained by Farm Credit through its attorneys. In reply, Rabo stated that whether Farm Credit was aware of the Williams Testamentary Trust "is not relevant to the after-acquired title issue[,]" because Terra gave the mortgage to Farm Credit with "mortgage covenants." Yet Rabo argued that even were knowledge relevant, "it is clear that Rabo did, in fact, believe that Terra . . . owned the complete interest in the property at the time the mortgage was executed." Rabo's authority for this representation was that the title opinion was a preliminary opinion, that after it was prepared an affidavit of heirship was executed on the mortgage date that, according to a supplemental title opinion, indicated that the only surviving heir of Williams executed the deeds into Terra in her individual capacity, as well as in her capacity as co-trustee under the Williams Testamentary Trust, and that "it was the opinion of the examining attorneys that title to the entire surface estate of the captioned lands is vested in Terra[.]" (Alteration omitted.) (Emphasis omitted.) (Internal quotation marks and citations omitted.) Rabo concluded that "while not pertinent to the after-acquired title issue, it is evident that Rabo believed that Terra . . . owned the 100% interest in the property at the time the 1994 mortgage was executed."

{14}  Terra addressed Rabo's discussion of the examining attorney's opinion in the supplemental title opinion and pointed out that Rabo failed to mention that the opinion also stated "[s]ubject to those matters discussed in this opinion[.]" (Emphasis omitted.) And Terra asserted that the supplemental opinion clearly stated: "REQUIREMENT A: Unsatisfied. This requirement dealt with title to an undivided one-half interest in Tracts 2 and 3 of the captioned lands, credited in our original opinion to the heirs or devisees of . . . Williams, deceased." (Emphasis omitted.) Terra then argued in its sur-reply that this showed that "the requirement of the 1994 title opinion had not been satisfied with the recording of the [a]ffidavit of [h]eirship on November 9, 1994."

{15}  In the summary judgment proceeding, Terra submitted an affidavit of Steve Veigel. The affidavit indicates that for over nine years Veigel had "been owner of Burnett & Veigel, Inc., one of four general partners of Terra Partners, both parties to this action." He stated that in 1994 Terra "believed it was the only owner of the subject property until receipt of the [title opinion]" which he attached as an exhibit to the affidavit. In the district court, Terra also submitted requested findings of fact and conclusions of law. A requested finding set out the existence of the title opinion it had referred to in its briefing and explained that the 1994 title opinion stated that the Williams Testamentary Trust was the owner of 50% interest in the property.

7

**{16}** In its amended decision letter, based on which the court entered summary judgment favoring Terra on the mortgage interest issue, the court set out numerous facts, which we presume the court considered to be the undisputed facts that supported its decision and ultimate summary judgment. In the letter, the court determined, as a matter of law, that "the after-acquired title doctrine [was] not . . . applicable in this matter" without giving any indication on what ground or rationale it did so. One of the court's facts stated that the mortgage provided by Terra to Farm Credit mortgaged "all its interest in and to [the] property . . . with mortgage covenants." (Omission in original.) It is unclear whether the district court's reference to "all its interest" only applies to Terra's 50% ownership interest at the time of the mortgage due to the 1994 title opinion recognizing a 50% interest in the Williams Testamentary Trust. None of the facts nor anything else in the court's decision mentions anything about the 1994 title opinion or anything about any notice, knowledge, or intent on Farm Credit's part of any ownership interest of the Williams Testamentary Trust. As a result, it is impossible for this Court to determine whether the district court's grant of summary judgment was at all based on a notice, knowledge, or intent, rationale or issue relating to the 1994 title opinion and of the Williams Testamentary Trust ownership interest.

**{17}** The absence in the court's decision letter of any factual bases or legal rationale whatsoever for its legal conclusion and determination that "the after-acquired title doctrine [was] . . . not applicable in this matter" leads us to conclude that, in the court's view, the after-acquired title doctrine would not be applicable even were the court to view all of the facts in a light most favorable to Rabo, such as, for example, if the 1994 title opinion documents were ignored and the only material facts before the court were simply (1) the mortgage, (2) Rabo's later acknowledgment that Terra owned only 50% of the property at the time of the mortgage transaction, and (3) Terra's after-acquired ownership of the remaining 50% of the property. We cannot accept that limited view of the doctrine's applicability.

**{18}** We hold that, as a general matter, the after-acquired title doctrine can be applied in New Mexico in favor of a mortgagee of property based on mortgage covenants unless particular circumstances warrant non-application. We therefore reverse the district court's summary judgment favoring Terra and remand the case to the district court for further proceedings on the issue of application of the after-acquired title doctrine. To the extent the factual circumstances that are material to the analysis are disputed, summary judgment will be inappropriate.

**The Cross-Appeal**

**{19}** Defendants assert on cross-appeal that the district court erred in dismissing its counterclaims through which they sought (1) to establish the priority of Terra Partners' assigned judgment lien acquired based on judgments obtained by Diversified Financial Services, Inc. (Diversified) and to quiet title to the property and foreclose the Diversified judgment lien; and (2) to establish the leasehold estate of Terra Partners on the basis of collateral estoppel arising from certain Texas judgments.

8

**{20}**   Rabo argues that Defendants failed to preserve these points because Defendants did not raise them in the district court. We agree. Defendants state that these points were preserved in their response to Rabo's motion for summary judgment and during oral argument in the district court. We have reviewed the record at the record cites supplied by Defendants. The record does not support preservation. We will not consider points and arguments that are not made to the district court and raised for the first time on appeal. *See Agua Fria Save The Open Space Ass'n v. Rowe*, 2011-NMCA-054, ¶ 27, 149 N.M. 812, 255 P.3d 390 ("To preserve a question for review, it must appear that a ruling or decision by the district court was fairly invoked." (alterations omitted) (internal quotation marks and citation omitted)); *see also Chrysler Credit Corp. v. Beagles Chrysler-Plymouth*, 83 N.M. 272, 273, 491 P.2d 160, 161 (1971) ("[A] matter not brought to the attention of the trial court cannot be raised for the first time on appeal.").

## CONCLUSION

**{21}**   We reverse the district court's determination that Rabo was entitled to foreclose its mortgage lien only as to a 50% interest in the property, and we remand for further proceedings related to the applicability of the after-acquired title doctrine in accordance with this Opinion. Additionally, we hold that lack of preservation precludes consideration of Defendants' cross-appeal points, and we affirm the district court's dismissal of Defendants' counterclaims.

**{22}   IT IS SO ORDERED.**

 

 

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

 

**MICHAEL D. BUSTAMANTE, Judge**

 

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *RABO Agrifinance, Inc. v. Terra XXI, Ltd.*, No. 30,286**

| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |

| **CP** | **CIVIL PROCEDURE** |
| CP-CM | Counterclaim |
| CP-ES | Estoppel |

| | |
|---|---|
| CP-SJ | Summary Judgment |

**PR**              **PROPERTY**
PR-CN        Covenants
PR-FC        Foreclosure
PR-MG      Mortgages