This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**MICHAEL MONTOYA,**

　　Plaintiff-Appellee,

v.　　　　　　　　　　　　　　　　　　　　　　　　　**NO. 30,532**

**TRINIDAD MEDINA and
RAFAELITA MEDINA,**

　　Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY
Sam B. Sanchez, District Judge**

Carol A. Neelley, P.C.
Carol A. Neelley
Taos, NM

for Appellee

Armstrong & Armstrong, P.C.
Julia Lacy Armstrong
Taos, NM

for Appellants

## MEMORANDUM OPINION

**CASTILLO, Chief Judge.**

Plaintiff Michael Montoya brought a quiet title action against adjacent property owners, Defendants Trinidad and Rafaelita Medina (Medinas). The district court quieted the title in Montoya. This is the second appeal by Medinas. In the first appeal, we remanded the matter to the district court for entry of appropriate findings of fact. *Montoya v. Medina*, 2009-NMCA-029, ¶ 9, 145 N.M. 690, 203 P.3d 905. The district court reissued its order with findings of fact and conclusions of law. Medinas now argue that the evidence proves they possessed superior title and that, in the alternative, they gained title to the disputed parcel through adverse possession.

We conclude that substantial evidence supports the district court's findings and, therefore, we affirm the decision of the district court.

**BACKGROUND**

**The Disputed Parcel**

The plot of land claimed by each party—dubbed Tract 2—is approximately 24 ½ feet by 32 ½ feet, and is nestled to the east of an arroyo and south of the right-of-way to Highway 75. A drainage ditch running between the Montoya and Medina properties curves north toward the highway, locking in the disputed parcel between the ditch to the east and the arroyo to the west. The Montoya property lies to the south and west of Medinas' Tract 54.

**Montoya's Chain of Title**

2

Montoya presented a chain of title stretching back to a 1934 U.S. Patent to Benito Romero, his wife's grandfather, for a larger parcel of land measuring 22.764 acres in an area south of Highway 75 known as Exception 89, Private Claim 50. Two years after receiving that patent, Benito conveyed all of his real property to his wife, Rafaelita, who later passed the property to their son Raymundo in two transactions—one in 1941conveying the western five acres of the property and a second in 1947 conveying the eastern 18 acres. In 1961, seven people who appear to be the family members of Raymundo Romero executed a quitclaim deed conveying to Raymundo the property bearing the same description as in previous deeds. Finally, in 1988, Raymundo executed three deeds placing the entire property in joint tenancy with his wife, Orcibiana. According to Montoya, the boundary descriptions included in the various deeds are not materially different throughout the Romeros' chain of title. With the property consolidated in Raymundo and Orcibiana, the couple in 2002 conveyed two small plots of land—referred to as Tract 1 and Tract 2—to Montoya that allowed Montoya to bridge two larger parcels that had been deeded to him by Raymundo Romero in 1987 and that had been separated by the arroyo. It is Tract 2 that is in dispute here.

**Medinas' Chain of Title**

Medinas trace their title to a 1941 conveyance from Taos County to the State

of New Mexico, a 1947 conveyance from the State to Candido Muniz, and a 1949 transaction between Muniz and Clovis Medina, the husband of co-defendant Trinidad. In 1983, the heirs of Clovis quit claimed the property to Trinidad, who then sold four tracts to her daughter-in-law, Rafaelita, the following year. One of the parcels, Tract 54, borders the property owned by Montoya. The plot of land in dispute falls on either side of that border.

**Positions of the Parties**

Montoya's position is that a 1941 Taos County Reassessment Survey, based in part on government markers, places Tract 2 within the original Romero patent from the United States and thus within the property he purchased from Raymundo in 2002. Medinas contend that the Romero deeds are vague on that particular boundary and that their Tract 54 goes beyond the ditch and west to the arroyo, thus encompassing the disputed plot. That same 1941 Taos County Reassessment Survey describes Medinas' property and gives the western boundary as the drainage ditch. In addition, a hand-drawing included in the survey gives Medinas' Tract 54 a triangular shape that would seem to preclude the possibility that Tract 2 falls within its boundaries. However, the tax deed into Candido and subsequently into Clovis gives the western boundary not as the ditch but as the "Ritito," or the arroyo. Throughout the proceedings, the arroyo is referred to, alternatively, as the "ritito" or the "retito." We will use the common

4

term arroyo here.

Montoya plans to use the disputed parcel to construct a 16-foot-wide driveway that would give him a more convenient and direct route to Highway 75. Medinas now use a portion of the disputed parcel for a leach field running off of their septic tank, and they argue that relocating that system would be prohibitively costly if not impossible given the placement of their house on Tract 54 and its proximity to the highway. In addition, Medinas argue that they have used the disputed parcel at various times, dating back to the 1940s, as the site of an outhouse and a commercial woodpile. Those activities, combined with the plot's current use as a leach field, Medinas contend, go toward their argument of ownership by adverse possession.

**DISCUSSION**

**Standard of Review**

In reviewing a district court's order that includes findings of fact and conclusions of law, an appellate court will give deference to the findings of fact and review the conclusions of law de novo. *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960. "Substantial evidence" is defined as "such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). "We review de novo the [district] court's application of the law to the facts in arriving

at its legal conclusions." *Ponder*, 2000-NMSC-033, ¶ 7. In a quiet title action, our Supreme Court stated: "This Court will not disturb findings, weigh evidence, resolve conflicts or substitute its judgment as to the credibility of witnesses where evidence substantially supports findings of fact and conclusions of law of the [district] court." *Sternloff v. Hughes*, 91 N.M. 604, 608, 577 P.2d 1250, 1254 (1978).

Medinas argue that the standard of review is de novo because the evidence is documentary. Montoya counters that the standard of review is substantial evidence, relying in part on *Shearton Development Co., LLC v. Town of Chilili Land Grant*, 2003-NMCA-120, 134 N.M. 444, 78 P.3d 525. In *Shearton*, this Court refined the discussion of standard of review by distinguishing between evidence that is strictly documentary and evidence that includes the oral testimony of witnesses. *See id.* ¶ 32. In that case we stated: "[The d]efendants argue that when most of the evidence is documentary, the standard of review is de novo. [The d]efendants' argument, however, overlooks that the district court relied on the surveyor's testimony to decide a question of fact. We review this finding for substantial evidence." *Id.*; *see also Pucci Distrib. Co. v. Nellos,* 110 N.M. 374, 377, 796 P.2d 595, 598 (1990) (stating that an appellate court applies substantial evidence review after refusing to focus solely on documentary evidence when "extensive testimonial evidence" existed). In *Shearton*, this Court took note of the plaintiff's presentation of testimony by an expert

surveyor "who physically and mathematically tracked the metes and bounds description" of the disputed parcel and found that the description of the property contained the disputed roads. 2003-NMCA-120, ¶ 31. The district court there found as such, and we affirmed. *Id.* ¶ 39. In the case before us, we review the district court's findings of fact, which are based on both documentary evidence and expert testimony under the substantial evidence standard.

**Sufficient Evidence**

Medinas attack the 27 findings of fact and two conclusions of law enumerated by the district court, suggesting that some merely reiterate matters in evidence and others are contradicted by the evidence. Medinas argue that the conclusions of law do not directly address Montoya's claim or propound to quiet title in him.

On appeal, a court reviewing a district court's decision is bound by that court's findings of fact, "unless they are demonstrated to be clearly erroneous or not supported by substantial evidence." *Padilla v. City of Santa Fe*, 107 N.M. 107, 109, 753 P.2d 353, 355 (Ct. App. 1988). The district court's findings of fact "are sufficient if a fair construction of all of them, taken together, justify the [district] court's judgment." *H.T. Coker Constr. Co. v. Whitfield Transp. Inc.*, 85 N.M. 802, 804, 518 P.2d 782, 784 (Ct. App. 1974). Our Supreme Court has recognized that a district court's mixing of findings of fact and conclusions of law is not fatal to an overall

decision. *See Watson Land Co. v. Lucero*, 85 N.M. 776, 777, 517 P.2d 1302, 1303 (1974) ("We have long held that findings are sufficient where they justify the judgment, though they intermingle matters of fact and conclusions of law."). We have likewise noted that ultimate facts often "are indistinguishable from and identical to the conclusions of law." *Kincaid v. WEK Drilling Co.*, 109 N.M. 480, 482, 786 P.2d 1214, 1216 (Ct. App. 1989). "This [C]ourt has observed that occasional intermixture of matters of fact and conclusions of law does not constitute error where the court can see enough, upon a fair construction, to justify the judgment of the court." *Id.* In *Goodwin v. Travis*, 58 N.M. 465, 471, 272 P.2d 672, 676 (1954), the New Mexico Supreme Court reviewed a district court decision settling a dispute of a loan versus a gift and found that one of the findings of fact and one of the conclusions of law "differ[ed] in no substantial respect." Despite such intermingling of facts and law, the Court affirmed the decision of the district court. *Id.*

In this case, neither of the district court's two conclusions of law directly addresses the question of whether substantial evidence showed that Montoya established ownership in the contested Tract 2. However, the final finding of fact, No. 27, states: "The testimony of Floyd Martinez, Vice President and Chief Title Examiner of Land America, Taos Title, establishes that the deeds produced as exhibits at the trial in this matter established the ownership of the property identified as Tract

8

'2' in . . . Montoya." Such a finding of fact, couched in the language of a conclusion of law, suffices to show that the district court reached the conclusion that Montoya established ownership and was entitled to a decision quieting title in him.

**Validity of the Montoya Title**

Medinas challenge the validity of title held by Montoya, in part based on the description of the property passed down through the Romero family. Medinas also question the validity of the transfer from Benito to his wife, Rafaelita, in 1936.

Medinas properly note that in an action to quiet title, the plaintiff has the burden of bringing forth evidence to establish title and cannot merely point to a lack of evidence supporting a defendant's counterclaim. In the previous appeal to this case, we reiterated a longstanding principle: "In a suit to quiet title, the plaintiff must recover on the strength of the plaintiff's own title or not at all, and cannot rely on any weaknesses in a defendant's title." *Montoya*, 2009-NMCA-029, ¶ 5; *see also Baker v. Benedict*, 92 N.M. 283, 286, 587 P.2d 430, 433 (1978).

A district court must decide whether a deed contains a sufficient description of the property in question to convey a disputed tract. "The sufficiency of a description is not governed by any inflexible rule or set of rules." *Maestas v. Martinez*, 107 N.M. 91, 94, 752 P.2d 1107, 1110 (Ct. App. 1988). A court should strive to "place itself in the situation of the grantor and endeavor to discover and effectuate his or her intent."

*Id.* In order for a conveyance of land to be valid, "it is essential that the land itself . . . be capable of identification, and, if the conveyance does not describe the land with such particularity as to render this possible, the conveyance is absolutely nugatory." *Komadina v. Edmondson*, 81 N.M. 467, 469, 468 P.2d 632, 634 (1970) (internal quotation marks and citation omitted). However, a court will presume that a grantor "intended to convey something and the deed will be upheld unless the description is so vague or contradictory that it cannot be ascertained what land in particular is meant to be conveyed." *Id.* "Whether a description in a deed sufficiently identifies the land it attempts to convey is a question of fact which we do not disturb if there is substantial evidence in the record to support the district court's finding." *Rendleman v. Heinley*, 2007-NMCA-009, ¶ 23, 140 N.M. 912, 149 P.3d 1009. In *Sternloff*, our Supreme Court upheld a lower court's decision quieting title in the plaintiff even though the defendants claimed that the description of the property in the deed was vague and should have been declared void. 91 N.M. at 608, 577 P.2d at 1254. The Court found substantial evidence to support the district court's decision based on both the deed and on extrinsic evidence offered by the plaintiff at trial. *See id.* This Court, in *Blumenthal v. Concrete Constructors Co. of Albuquerque,* 102 N.M. 125, 133, 692 P.2d 50, 58 (Ct. App. 1984), upheld a district court decision that quieted title in the plaintiff and found a description of a deed adequate after entertaining testimony from

10

a surveyor in order to establish boundaries.

In the case before us, the boundary descriptions found in the Romero family deeds and the deed to Montoya are not materially different. We begin with the 1941 Taos County Reassessment Survey that interprets the original United States Patent to Benito and describes the northern boundary of the 23-acre parcel as being State Highway 75 and Tracts 54, 56, 57, 58 and 59. In the first transfer from Rafaelita to Raymundo in 1941, the northern boundary is described as Highway 75; in the 1947 conveyance from Rafaelita to Raymundo of the much larger parcel, the northern boundary is listed as "Vadito North Community Ditch, Jose D. Mascarenas, San Lorenzo or Picuris Indians, and Public Highway." The 1961 quitclaim deed to Raymundo similarly states the northern boundary as "Highway No. 75, San Lorenzo Indians (Picuris)[,] Jose D. Mascarenas or heirs and community ditch of Vadito." And the 1988 deed enacting a joint tenancy between Raymundo and Orcibiana puts the northern boundary at "Vadito North Community Ditch, Jose D. Mascarenas, San Lorenzo or Picuris Indians, and Public Highway."

At trial, Montoya introduced the expert testimony of title examiner Floyd Martinez, the president of LandAmerica Taos Title, who analyzed the land grant, the 1941 Taos County map and the deed descriptions. Martinez testified that the disputed piece of land, Tract 2, lies within the boundaries of the original United States patent

to Benito that eventually was conveyed whole to Raymundo. Martinez identified government markers that purported to establish boundaries and pinpointed the edge of the original Romero property as hitting such a marker at a point numbered 1 and 4 on a survey map and running south to a point marked Corner 20. The testimony places the disputed Tract 2 in the original Romero grant. Martinez also testified that in his search of Taos County property records he found no deeds emanating from the Romero family to other third parties.

Twice during the proceedings—once in their brief in chief and once during opening arguments—Medinas conceded that the disputed Tract 2 lies within the boundaries of the original United States patent to Benito. At the same time, though, Medinas argued that the triangular shape given to their Tract 54 in the 1941 Taos County Reassessment Survey is erroneous and that the descriptions in the subsequent deeds in their chain of title—suggesting a four-sided piece of land, with the key western boundary being the arroyo and not the drainage ditch—show that the disputed Tract 2 falls within the boundaries of their property. The district court, weighing the evidence presented, rejected that contention by Medinas and instead found in favor of the theory put forth by Montoya and the testimony of his expert witness.

Medinas also contend that the conveyance in 1936 from Benito to Rafaelita was conditional in nature and testamentary, meaning that Rafaelita had nothing to

12

convey to Raymundo in 1941 and 1947, thus invalidating Raymundo's deeds to Montoya, including the disputed parcel of land. A translation of the deed from Benito to Rafaelita refers to "40 acres more or less according to the patents in our names" and excepts property conveyed to "A. Elizardo Mascarenas." The deed also includes a condition that all of the property "will belong to my wife" upon Benito's death.

Medinas rely on *Komadina* and argue that the boundaries of the original Romero patent are not clearly identifiable and that a flawed transfer from Benito to Rafaelita means that "the deed must be considered as conveying nothing." They also argue that deeds in Montoya's chain of title "are clearly void as a matter of law, because the property purportedly conveyed by them cannot be identified by their language." In essence, Medinas say that Rafaelita had nothing to convey to Raymundo in 1941 and 1947, and thus Raymundo could not convey the parcel in question to Montoya. We decline Medinas' invitation to wipe out 23 acres of land handed down among generations of the Romero family.

Such a narrow reading stretches the logic of *Komadina* too far, especially when taking into account evidence to the contrary presented at trial. The strained argument also ignores the second part of *Komadina's* rule: the presumption that a grantor "intended to convey something" and that a deed will be upheld "unless the description is so vague or contradictory that it cannot be ascertained what land in particular is

meant to be conveyed." 81 N.M. at 469, 468 P.2d at 634. When viewing as a whole the Montoya chain of title, the intent of the grantors can be adequately ascertained, and the chain of deeds within the Romero family show an intent to consolidate the original 22.764-acre parcel in Raymundo. "[T]he issue on appeal is not whether there is sufficient evidence to support an alternative finding, but whether the court's determinations were supported." *Pucci Distrib. Co.*, 110 N.M. at 376, 796 P.2d at 597. Here, based on the evidence presented below and the district court's findings of fact, it cannot be said that the district court erred in finding validity in Montoya's chain of title. In sum, we conclude that substantial evidence in the record supported the district court's findings of fact and that those findings were sufficient to support the district court's determination that Montoya owned the parcel of land in question.

**Medinas' Adverse Possession Claim**

Medinas alternatively argue that, regardless of the legitimacy and clarity of the deeds in each party's chain of title, their family has gained title to the parcel in question through adverse possession.

In order to claim property under the theory of adverse possession, a party must have a good faith color of title and use the land continuously for a period of 10 years. NMSA 1978, § 37-1-22 (1973). The claim of right must be actual, visible, exclusive, hostile, and continuous. *Merrifield v. Buckner*, 41 N.M. 442, 448, 70 P.2d 896, 899

14

(1937). Our Supreme Court has stated that "such possession or element cannot be established by loose, uncertain testimony which necessitates resort to mere conjecture." *Id.* (internal quotation marks and citation omitted). The party claiming adverse possession is also required under New Mexico law to pay the taxes that have been assessed against the property for the 10-year statutory period. Section 37-1-22. The failure to pay taxes on the property is fatal to a claim of adverse possession, even if other elements of adverse possession are proved. *See Platt v. Martinez*, 90 N.M. 323, 324, 563 P.2d 586, 587 (1977). The standard of proof by the party claiming adverse possession is higher than merely a preponderance of the evidence. "A party claiming ownership of land by adverse possession must prove by *clear and convincing evidence* continuous adverse possession for ten years under color of title, in good faith, and payment of taxes on the property during these years." *Williams v. Howell*, 108 N.M. 225, 227, 770 P.2d 870, 872 (1989) (emphasis added). For evidence to be considered clear and convincing, it "must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Children, Youth & Families Dep't v. Joseph M.*, 2006-NMCA-029, ¶ 15, 139 N.M. 137, 130 P.3d 198 (internal quotation marks and citation omitted).

In this case, substantial evidence supports the district court's conclusion that

Medinas did not prove adverse possession by clear and convincing evidence. First, Medinas brought forth no evidence that they paid taxes on the disputed parcel. They instead suggest a matter of first impression, emphasizing within the key statutory element the phrase "all the taxes . . . which during that period *have been assessed* against the property." Section 37-1-22 (emphasis added). They argue that either (1) Tract 2 lies in a no-man's land in an unnumbered tract on which taxes have never been assessed, or (2) Tract 2 lies within their own Tract 54, and thus they have been paying taxes on the disputed parcel all along. We choose not to parse the statute in such a way that would essentially create new law and establish policy for proving a claim of adverse possession. Medinas' claim fails absent a showing of the payment of taxes on the parcel in dispute.

Besides the tax issue, other evidence brought forth by Medinas was found by the district court to have fallen short of the clear and convincing standard. While Trinidad Medina testified that at least a portion of the disputed parcel had been used for decades variously for an outhouse and a woodpile, she also stated on cross-examination that she could not be sure of the exact location of either the outhouse or the woodpile. She also stated that the arroyo was "real wide" during that period of use, and she could not recall exactly when the use occurred. The district court could logically have found that Medinas failed to pinpoint their use of the disputed parcel,

both the time frame and placement. For instance, if the arroyo was "real wide" 60 years ago, it is possible that a woodpile placed in that area did not sit on the disputed parcel, which abuts a much-narrower arroyo now. For the reasons stated above, we hold that substantial evidence in the record supports the district court's conclusion that Medinas failed to prove ownership of Tract 2 by adverse possession.

**CONCLUSION**

Concluding that the findings of fact below were based on substantial evidence in the record, we affirm the judgment of the district court.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**JONATHAN B. SUTIN, Judge**